(April 20, 1894.)

## STATE v. SCHIELER.

[37 Pac. 272.]

DEPUTY SHERIFF AS WITNESS—EXCUSED AS GRAND JUROR.—The record shows that the deputy sheriff had served process in the case on trial, and was also a witness in the case. *Held,* it was within the discretion and proper for the court to excuse him from serving as a grand juror while such case was being considered by them.

PRELIMINARY EXAMINATION.—Under our statute a preliminary examination, as a basis upon which to find an indictment, is not necessary.

INDICTMENT—DEPOSITIONS READ TO GRAND JURY.—Where depositions are read before the grand jury, and the same parties who made them personally appear and testify in the case, and the record does not show that the indictment was found, or predicated upon such depositions, *held,* not to be reversible error.

DISCRETION OF TRIAL COURT—WIFE OF DECEASED ALLOWED TO BE PRESENT IN COURT.—It is entirely within the discretion of the trial court to permit the wife of deceased to remain in the court-room during the trial, although objected to by defendant.

PRACTICE—MOTIVE FOR HOMICIDE.—It is not incumbent upon the prosecution to show in the first instance any motive for the homicide further than the same was developed by a proof of the circumstances of the killing. The correct practice is for the defense to show the absence of motive, to be rebutted by proof on the part of the prosecution.

INSTRUCTIONS—EXCEPTIONS.—Where the law of the case has been correctly given by the court to the jury, and, in addition thereto, gives an erroneous instruction, which is not excepted to until after the verdict is returned, *held,* that the exception comes too late, and such error is not sufficient to warrant a reversal.

SELF-DEFENSE.—W. was unarmed, peaceably and quietly passing along a road or trail, which ran through the premises of another, and upon which he had been forbidden to travel by S., who was the servant of the owner. S., while completely concealed, fired at and killed W., who was thirty feet away, and who was making no hostile demonstration, or even approaching the house in which S. was concealed. *Held,* that a plea of self-defense could not be predicated upon such a state of facts, and the court could have properly declined to instruct upon the law of self-defense.

(Syllabus by the court.)

APPEAL from District Court, Idaho County.

James W. Reid and James W. Poe, for Appellant.

The appellant was entitled to have the charge against him investigated by a legally constituted grand jury. By excluding the juror C. F. Smith simply on the ground that he was a deputy sheriff denied the appellant this legal right. Only the statutory grounds could be urged for his exclusion. The cause assigned is not one of them. (Rev. Stats., sec. 7609; *People v. Colmere,* 23 Cal. 631; *People v. Turner,* 39 Cal. 370; *People*

*v. Geiger,* 49 Cal. 643; *Levy v. Wilson,* 69 Cal. 105, 10 Pac. 272.) In all cases which must be afterward investigated by the grand jury, the examination must be taken and cannot be waived or unreasonably delayed by either party, and the testimony must be reduced to writing, as a deposition, by the magistrate, or under his direction, and authenticated. Appellant was refused such an examination, was denied counsel, was confronted by no witnesses, and committed to jail without authority of law. (U. S. Const., arts. 5, 6; Idaho Const., art. 1, sec. 13; Rev. Stats., secs. 7565-7589; *Ex parte Walsh,* 39 Cal. 705; *Kalloch v. Superior Court,* 56 Cal. 229; *People v. Smith,* 59 Cal. 365; *People v. Hope,* 62 Cal. 293; *People v. Elliott,* 80 Cal. 299, 22 Pac. 207; *People v. Barnes,* 66 Cal. 594, 6 Pac. 698.) The indictment is invalid and void because in the investigation of the charge against the appellant the grand jury received as evidence the depositions of Crosby Brewer, James A. Long, and Frankie M. Wilson taken at a coroner's inquest, before the appellant was arrested, and neither in form or substance conforming to the requirements of section 7576 of the Revised Statutes of Idaho; and for the further reason that said grand jury received as evidence the *ex parte* complaint made by H. W. Cone, before the justice of the peace for the arrest of appellant. (Idaho Rev. Stats., secs. 7634, 7576; 1 Bishop's Criminal Procedure, sec. 1194; *People v. Mosine,* 54 Cal. 575; *Williams v. Chadwich,* 6 Cal. 550, 65 Am. Dec. 528; *People v. Chong Ah Chune,* 57 Cal. 567; *People v. Mitchell,* 64 Cal. 85, 27 Pac. 862.) As the appellant never had any preliminary examination and the indictment was found on illegal evidence, the court acquired no jurisdiction. (*People v. Riley,* 65 Cal. 107, 3 Pac. 413; *People v. Wheeler,* 65 Cal. 77, 2 Pac. 892; *Ex parte McConnell,* 83 Cal. 558, 23 Pac. 1119; *People v. Thompson,* 84 Cal. 598, 24 Pac. 384; *People v. Bawden,* 90 Cal. 195, 27 Pac. 204; *State v. Sorenson,* 84 Wis. 27, 53 N. W. 1124.) The court erred in overruling the appellant's motion in arrest of judgment. The court never acquired any jurisdiction in the action; the judgment should be arrested, and the respondent discharged. (Rev. Stats., sec. 7750; *Ex parte Hartman,* 44 Cal. 34.) The court erred in refusing to require the district attorney to call the witness James A. Long. This

witness knew more of the *res gestae* than any other witness. He was not related to any of the parties and in no way interested. He had been called before the grand jury and his *ex parte* deposition taken at the coroner's inquest read to the grand jury. The prosecution should have been required to call him. (*People v. Robinson*, 6 Utah, 101, 21 Pac. 403; *People v. Robertson*, 67 Cal. 646, 8 Pac. 600; *Weller v. People*, 30 Mich. 16; *Gibson v. State*, 23 Tex. App. 414, 5 S W. 314.) Any testimony calculated to illustrate the motives of the appellant and showing that he acted under a real and honest apprehension of danger was relevant and material. (*Rippy v. State*, 1 Crim. Def. 345; *Williams v. State*, 1 Crim. Def. 349.) In the sixth instruction the jury are instructed that they can render one of four verdicts. This, we maintain, is error. Only one of two verdicts could be returned—guilty as charged, or not guilty. (*State v. Froin*, 82 Ind. 532; *Hodge v. State*, 85 Ind. 561; Bishop's Statutory Crimes, secs. 501, 512; 10 Am. & Eng. Ency., of Law, 573; *Whitcher v. State*, 2 Wash. 286, 26 Pac. 268; Rev. Stats., sec. 6560, 6561, 6562, 6565.)

George M. Parsons, Attorney General, for the State.

C. F. Smith was a qualified and acting deputy sheriff of the county of Idaho, before and at the time of the trial, had served process in the preliminary proceedings in the case, and, upon examination in open court stated that it was intended that he should be a witness in the case, was challenged by the prosecution, and the challenge allowed by the court. The decision was final and is not subject to review. (Pen. Code, sec. 7940; *People v. Murphy*, 45 Cal. 157-142; *People v. Colson*, 49 Cal. 679; *People v. Atherton*, 51 Cal. 495, 496; *People v. Cochran*, 61 Cal. 548.) A grand jury may indict if no preliminary examination was had. (Pen. Code, sec. 7630.) If the defendant was not given a preliminary examination, and he desired it, the examination might have been compelled by *mandamus*. (*People v. Barnes*, 66 Cal. 594, 6 Pac. 698.) It required no examining court to enable the grand jury to indict. (*Osborn v. Commonwealth*, 14 Ky. Law Rep. 246, 20 S. W. 223, 234; Idaho Const., art 1, sec. 8.) "The grand jury must inquire into all public offenses committed or triable within the county." (Pen. Code, secs. 7630-7638; 1 Bishop's Criminal Procedure,

sec. 744.) "The objection herein does not apply in cases of indictment." (*People v. Goldenson,* 76 Cal. 328-345, 19 Pac. 161.) The motion is not based on any of the statutory grounds. (Pen. Code, sec. 7730.) The grounds enumerated are the only grounds upon which an indictment may be set aside on motion. (*People v. Butler,* 1 Idaho, 231; *People v. Southwell,* 46 Cal. 141; *People v. Schmidt,* 64 Cal. 260, 30 Pac. 814.) The statute governs in prescribing the manner, form and substance of indictment, and the procedure thereunder, through the whole course of a criminal investigation. (*People v. Cronin,* 34 Cal. 191.) "An objection to the formation of a grand jury cannot be presented in the court below on a motion to set aside the indictment." (*People v. Hunter,* 54 Cal. 65.) The indictment was found, indorsed and presented as prescribed by sections 7665, 7668, 7669 of the Penal Code. (*People v. Colby,* 54 Cal. 37; *People v. Hunter,* 54 Cal. 65; *People v. Geiger,* 49 Cal. 51.) The complaint filed in a magistrate's court is a deposition. The grand jury properly received and examined the depositions taken before the coroner's jury. (*People v. Stuart,* 4 Cal. 218, 219; *Charge of Justice Field,* 2 Saw. 670, Fed. Cas. No. 18,255; Pen. Code, sec. 7634,) A deposition taken before a coroner's jury is legal evidence. (1 Bishop's Criminal Procedure, sec. 524; Pen. Code, sec. 8382.) The filing of the indictment gave the court jurisdiction. (*Washburn v. People,* 10 Mich. 383; *People v. Johnson,* 71 Cal. 392, 12 Pac. 261; *Ex parte McConnell,* 83 Cal. 558, 23 Pac. 1119; *People v. Bawden,* 90 Cal. 195, 27 Pac. 204.) Exclusion of witnesses from the courtroom rests in the discretion of the trial court. (1 Greenleaf on Evidence, sec. 432, and notes; *People v. Garnett,* 29 Cal. 622; *People v. Hong Ah Duck,* 61 Cal. 387-393; *People v. Sam Lung,* 70 Cal. 515, 11 Pac. 673.) The prosecution are not required to call all witnesses whose names are indorsed on the indictment. (*People v. Robinson,* 6 Utah, 101, 21 Pac. 403; *People v. Robertson,* 67 Cal. 651, 8 Pac. 600.) Objections to the instructions given by the court of its own motion, not excepted to at the time they were given, cannot be heard on appeal. (*People v. Biles,* 2 Idaho, 114, 6 Pac. 120; *Cook v. Territory,* 3 Wyo, 110-118, 4 Pac. 887; *People v. Hart,* 44 Cal. 598; *Price v. State,* 36 Miss. 531, 72 Am. Dec. 195-

200.)   Self-defense may be resorted to in order to repel force, but not to inflict vengeance.   (Wharton's Criminal Law, 8th ed., sec. 485; *State v. Smith,* 12 Mont. 378, 30 Pac. 679; East's Pleas of the Crown, 272.)

HUSTON, C. J.—The defendant was indicted for the crime of murder, in the killing of one John S. Wilson, and, upon trial at the June term of the district court for Idaho county, was convicted of the crime of manslaughter, from which conviction, and judgment thereon, this appeal is taken.   The record presents fifty-four assignments of error.

The first assignment of error is the excusing of one F. C. Smith from the grand jury.   It seems from the record that said Smith was not only a deputy sheriff of the county, and had been engaged in serving process in the case on trial, but he was a witness in the case.   The excusing him from the grand jury was in the discretion of the court, and was entirely proper.

The second assignment of error is the refusal of the court to set aside the indictment upon motion of the defendant, based upon the grounds: 1. That no preliminary examination had been had of defendant upon the charge upon which the indictment was found; 2. That the indictment was not found by a competent grand jury; 3. That the indictment was found upon incompetent and illegal evidence.   As to the first ground, it is sufficient to say that under our statutes no preliminary examination is necessary to the finding of an indictment.   The second ground is a repetition of the first assignment of error, and has already been passed upon.   As to the third ground of the motion to set aside the indictment, it appears that certain depositions were introduced before the grand jury; but it does not appear, nor is it presumable, in the face of the fact that some seven witnesses were personally examined by the grand jury, that the indictment was found or predicated in whole or in part upon such depositions.   And the parties who made the depositions—with, we believe, a single exception—were personally before the grand jury as witnesses.   We find no error in the refusal of the motion to set aside the indictment.

The third assignment of error is to the overruling of the demurrer to the indictment.   The demurrer was general, and was properly overruled.

The fourth assignment of error is to the action of the district court in refusing the request of defendant's counsel to be allowed the closing argument upon the trial. As this assignment was not urged on the argument, we presume the counsel, upon reflection, had wisely concluded to abandon it.

The fifth assignment of error is the allowing of the witness Frankie Wilson (wife of deceased) to remain in the courtroom during the trial, against the objection of defendant. This, we think, was a matter entirely within the direction of the trial court, and inasmuch as the uncle of defendant was, at request of defendant's counsel, permitted to remain in the courtroom during the trial, there is no good reason apparent why the wife of deceased should not be allowed the same privilege, if it seemed proper to the trial court.

The sixth assignment is covered by what has been said in regard to the second assignment.

The seventh to the sixteenth assignments of error, inclusive, go to the admission of testimony. We have carefully and laboriously examined the testimony in the record, and we are convinced that more latitude was given the defense, in the introduction of testimony, than a strict enforcement of the rules would have permitted. The error, if any, in this regard, was in permitting a mass of testimony on the part of the defense which by no recognized legal rules could have any bearing upon or pertinency to the issues on trial.

In a plenitude of caution, counsel have included in their assignment of errors many exceptions which we do not deem it essential to consider or pass upon separately, as they are mostly raised on objections to the admission of testimony by the defendant tending to disprove what defendant assumed was claimed by the prosecution to be the motive actuating defendant in the commission of the homicide. In the presentation of the case on the part of the prosecution, certain witnesses testified to facts tending to prove that the defendant had been a suitor of the wife of deceased prior to her marriage with deceased, with the apparent object of predicating upon the rejection of his suit in that behalf a motive for his hostility toward the deceased, which culminated in the homicide. It was sought by defendant to negative the effect of this evidence by showing

the bad character of the wife of the deceased prior to her marriage, to wit, that she was of notoriously bad character, was the inmate of a brothel, etc. It was not incumbent upon the prosecution to show, in the first instance, any motive for the homicide, further than the same was developed by a proof of the circumstances of the killing. The absence of motive might be shown in defense, to be met by proof in rebuttal on the part of the prosecution. The prosecution, however, having offered proof tending to show the relations of defendant and the wife of deceased in the first instance, as supplying a motive for the homicide, it was entirely proper for the defense to introduce testimony tending to disprove any such relations; and this, we think, the court permitted, to the fullest extent necessary to that end. It is not possible that any jury possessed of ordinary intelligence could, after hearing the testimony introduced, as the same appears in the record, have any doubt as to the character of the wife of deceased prior to her marriage. But the defendant, in seeking to avoid Scylla, has run upon Charybdis. In showing the character of the woman (the wife of deceased), he has shown the relations that existed between her and the defendant at that time, which, it is evident from the record, were not of a purely platonic nature. It would seem to be the logic of the defense that, having done away with the presumability of marital aspirations on the part of the defendant toward the wife of deceased, he had thereby shown an absence of motive or ground of hostility on the part of the defendant toward deceased. This assumption is entirely unwarranted. All history, from King David down to Breckenridge, shows that lust is a far greater incentive to crime than a love which seeks only a pure and lawful consummation.

Several exceptions are taken to the instructions given by the court, as well as to the refusal of the court to give certain instructions asked by the defense. We have examined with critical care the instructions given by the court, and we find that, with one single exception, the law of the case was properly given. Nearly if not quite all of the instructions asked by the defense were given, in substance, by the court. Counsel, in criminal cases, are very prone to attempt to secure the benefit

of a closing argument to the jury by interpolating an argument into the instructions asked. The law of the case having already been correctly given by the court to the jury, to repeat it, with the embellishments of counsel, would tend, not only to distract the jury, but to impede the cause of justice.

The court having given the following instruction: "4. The jury are instructed that if they believe from all the evidence that at the time the defendant fired the fatal shot the circumstances surrounding the defendant were such as to induce in his mind an honest belief that he was in danger of receiving from deceased some great bodily harm, and that deceased was about to make a felonious assault upon him, or that deceased was wrong- fully and feloniously entering the dwelling-house or habitation to do him some great bodily harm, and that the defendant, in doing what he did, was acting from the instincts of self-pre- servation, then he was justified in doing what he did; other- wise, not"—added the following: "6. You are instructed that you can find one of four verdicts, and if you should find from the evidence, beyond a reasonable doubt, that the prisoner at the bar killed the deceased, John S. Wilson, with premeditated malice, purposely and maliciously, then you should find him guilty of murder in the first degree. Second. If you should find from the testimony, beyond a reasonable doubt, that the prisoner killed the deceased purposely and maliciously, but without deliberation and premeditation, then you should find the prisoner guilty of murder in the second degree. Third. If you are satisfied from the testimony, beyond a reasonable doubt, that the prisoner killed the deceased voluntarily, and under circumstances that did not justify or excuse the killing, then you should find the prisoner guilty of manslaughter. Fourth. If you are satisfied from the evidence, beyond a reason- able doubt, that the defendant, the prisoner at the bar, killed the deceased, John S. Wilson, in necessary self-defense, or that he believed that he was violently and forcibly trespassing upon the premises he was in charge of, with the intent to commit a felony, as explained in these instructions, and that he was jus- tified in the act of killing, then you should return a verdict of not guilty." So much of the latter part of the sixth in- struction as requires the jury to be satisfied "beyond a reason-

able doubt" is clearly erroneous. But in view of the fact that
the court had already, in its instructions, correctly laid down
the law, are we warranted in presuming that the jury were
misled, or the rights of the defendant impaired, by this mistake
of the court—attributable, as it evidently was, to the haste in
which the exigency of the trial had compelled the court to pre-
pare its instructions?

It is claimed in the argument by counsel for appellant that
the evidence warranted but one of two verdicts—either acquittal
on the ground of self-defense, or conviction for murder in the
first degree. We agree with counsel in this contention, in part.
We think the evidence in the case, as shown by the record, fully
warranted a verdict of murder in the first degree; but the
most careful and scrutinizing examination of the evidence has
failed to develop a single element of excuse or justification.
Where the evidence shows a case of murder in the first degree,
and the jury, under proper instructions, returns a verdict of
manslaughter, the verdict will not be disturbed. (*Jones v. Com-
monwealth,* 15 Ky. Law Rep. 797, 25 S. W. 877.) Hostility ex-
isted between the defendant and deceased. To what it was
attributable, is a matter of little consequence. Its existence
is established beyond question or cavil, and that it was mutual.
Threats had passed, made by both. On the morning of the
homicide, they had met and quarreled, and again threats were
interchanged. Defendant had told deceased that he must not
pass through the premises of Reibold on his way to the Dela-
ware mine. This trail had been and was being used by parties
passing to and from the Delaware mine, and objection to such
use seems to have been based more upon personal than general
grounds. But, even conceding that deceased was a trespasser,
it will scarcely be contended that his trespass, as shown by the
record, would be any justification for the taking of his life.
Deceased was passing along the trail peaceably and quietly in
the company of his wife, unarmed, except as to the "billy," as
it was called, which was found in his pocket after his death.
The defendant was in a log building, armed with a Marlin gun,
entirely and completely protected from any assault from the de-
ceased, had such assault been meditated or intended; and, when
the deceased was thirty feet or more from the building in which

the defendant was housed, defendant, without a word of warning—without any order or command to deceased to leave the premises—deliberately fires at him through an aperture in the cloth or curtain hanging in front of the window of the house in which defendant was. The evidence fails entirely to show anything like a hostile demonstration on the part of the deceased, either toward the defendant or toward the building where he was. Deceased had not even left the trail upon which he was traveling, or made or given any sign or evidence of an intention to approach the house where defendant was, or to leave the trail. Without note of warning, he was deliberately shot down. How is it possible that a plea of self-defense can be predicated upon such a state of facts? There was no element of self-defense in the case, and, in giving the instructions it did, based upon the theory of self-defense, we think the court went to the very verge of the rule of *"favorem vitae"*; and, viewing the verdict in the light of the evidence, it is impossible to conclude that the jury were misled, to the prejudice of defendant, by the unfortunate *lapsus* of the court in the sixth instruction. It is urged that no exception was taken to said sixth instruction until after the verdict was returned. This, in itself, is, in our view, sufficient to take it from the consideration of this court. It cannot be doubted that, had the attention of the court been called thereto before the jury retired, the correction would have been made, and it was due to the court that this should have been done. Failing to do it, we think the exception comes too late. Finding no error in the record warranting a reversal, the judgment of the district court is affirmed.

Morgan and Sullivan, JJ., concur.