(February 25, 1901.)

## STATE v. LYONS.

[64 Pac. 236.]

HOMICIDE—EVIDENCE OF FLIGHT.—When a party is charged with murder, evidence of flight is admissible, even though the homicide is admitted.

SAME.—It may be shown in connection with other circumstances and facts immediately connected with the homicide to enable the jury to determine the condition of the mind of the party accused of the homicide at the time of flight.

SAME—INSTRUCTION.—An instruction as to the flight of the accused,. where the homicide is admitted, may be considered by the jury to determine the degree of crime charged.

IMPEACHMENT—LEADING QUESTION ON IMPEACHMENT.—It is not error to permit a leading question to a witness called on impeachment, and then confine the cross-examination to the particular conversation.

INSTRUCTIONS—THREATS.—It is not error to sustain an objection to a question of alleged threats, where it is not shown that the threats. were communicated to the accused prior to the time of the homicide.

REFUSAL TO GIVE INSTRUCTIONS REQUESTED BY DEFENDANT. —When the court fully and accurately instructs the jury on all the issues involved, it is not error to refuse defendant's requests, even though they may correctly state the law.

(Syllabus by the court.)

APPEAL from District Court, Canyon County.

Lot L. Feltham, for Appellant.

Evidence of the flight of an accused person is admissible only for the purpose of showing who did the killing, and not for the purpose of proving guilt. In this case the accused admitted he did the killing, but claimed he did it in self-defense. Therefore, this proof was inadmissible for any purpose and instruction 41 should not have been given. (*People v. Ah. Choy,* 1 Idaho, 317.) A party may contradict his own witness. (Idaho Rev. Stats., sec. 6080; 1 Green on Evidence, sec. 444; *Norwood v. Kenfield,* 30 Cal. 399; *People v. Brilliant,* 58 Cal. 217.) The rule is a party may show that his own witness has made statements contrary to those testified to on the stand, when the testimony given has been against the party calling the witness. (*Conway v. State,* 118 Ind. 482, 21 N. E. 285; *Rhodes v State,* 128 Ind. 189, 25 Am. St. Rep. 429, 27 N. E. 867; *Schnuer v. State,* 18 Ind. App. 226, 47 N. E. 843; *Dravo v. Fabel,* 25 Fed. 116; *United States v. Hall,* 44 Fed. 864.) Rule stated in *State v. Brown,* 54 Kan. 71, 37 Pac. 996; *Torris v. People,* 19 Colo. 438, 36 Pac. 153; *People v. Mitchell,* 94 Cal. 550, 29 Pac. 1108; *State v. Steeves,* 29 Or. 85, 43 Pac. 947. It is error for the court, over the objection of appellant, to allow the prosecution to put a leading question to the witness, Walter Martin, for the purpose of impeaching the appellant, and afterward to refuse to permit appellant's counsel to cross-examine said witness upon the matter of his answer. (1 Greenleaf on Evidence, sec. 435; *Allen v. State,* 28 Ga. 396, 73 Am. Dec. 760, and note; 2 Phillips on Evidence, 893; *People v. Stock,* 1 Idaho, 222.) An instruction contrary to law is ground for reversal. (*People v. Long,* 39 Cal. 694.) An instruction contradicting a correct instruction on a material point is ground for reversal. (*State v. Webb,* 6 Idaho, 428, 55 Pac. 892; *People v. Valencia,* 43 Cal. 552; *People v. Powell,* 87 Cal. 348, 25 Pac. 486; *Plummer v. State,* 135 Ind. 308, 34 N. E. 968; 11 Ency. of Pl. & Pr. 145.) The acts and conduct of the deceased alone furnish the test by which the question of self-defense is measured and determined. (*People v. Thompson,* 92 Cal. 506, 28 Pac. 590; *People v. Hecker,* 109 Cal. 451, 42 Pac. 307.) The judge should limit his instructions to the facts in the case. (*Territory v. Evans,* 2 Idaho, 425, 17 Pac. 139; *People v. Byrnes,* 30 Cal. 207; *People v. Atherton,* 51 Cal. 495; 2 Deering's California Digest, p. 1528,

on assumed facts; 11 Ency. of Pl. & Pr. 170, and notes.)    An instruction that assumes a material fact is ground for reversal. (*Territory v. Kay*, (Ariz.), 21 Pac. 152; *People v. Williams*, 17 Cal. 142; *People v. Hertz*, 105 Cal. 660, 39 Pac. 32.)

Frank Martin, Attorney General, and S. H. Hays, for the State.

Appellant's first contention is that it is incompetent to show flight as a ground for establishing guilt. (*United States v. Kuntze*, 2 Idaho, 480, 21 Pac. 407; *People v. Flannelly*, 128 Cal. 83, 60 Pac. 670; *People v. Forsythe*, 65 Cal. 101, 3 Pac. 402.)    We admit that a party may impeach his own witness under some circumstances, such, for instance, as when he is entrapped by a hostile witness or deceived as to the testimony he will give. (29 Am. & Eng. Ency. of Law, 811.)    But under no circumstances can he deliberately call a witness in his own behalf for the purpose of impeaching him.    Oath of jurors. (*Clark v. Commonwealth*, 123 Pa. St. 555, 16 Atl. 795; *People v. Whitney*, 53 Cal. 420.)    Self-defense. (Rev. Stats., sec. 6571; *State v. Morey*, 25 Or. 241, 36 Pac. 575, 36 Pac. 573, cited by appellant; *People v. Bernard*, 2 Idaho, 193, 10 Pac. 50.)

STOCKSLAGER, J.—The defendant was convicted of the crime of murder in the second degree, from which judgment of conviction defendant appeals to this court.    The matters complained of by appellant are: "The admission of improper evidence over the objection of the appellant; the refusal to admit evidence offered on behalf of appellant; the giving of instructions by the court over the objection of appellant; and the refusal to give instructions asked for by him."

We gather from the record that on the tenth day of September, 1898, in Canyon county, this state, William H. Bradley received a gunshot wound in the head, and died from the effects thereof; that thereafter the defendant was charged with the crime of murder, informed against by the prosecuting officer of Canyon county, placed upon his trial, and on December 22, 1898, was found guilty of murder in the second degree; that on the twenty-ninth day of said month he was sentenced by the

judge of said court to the penitentiary of this state for the term of his natural life. The record does not disclose that a motion for a new trial was ever made or passed upon in this case by the trial court; hence we are not called upon to pass upon the sufficiency of the evidence to support the verdict and judgment of the court.

The first assignment of error is the refusal of the court to overrule appellant's objection to the introduction of the testimony of W. H. Taylor, ex-sheriff of Canyon county, as to the flight of appellant, and to afterward give instruction 42, and refuse appellant's request No. 18. Witness testified that he was "sheriff of Canyon county. Have known defendant since about the 1st of September. About the 10th of September, 1898, there was a warrant left at the office for the arrest of the defendant. I don't think I was at home at the time. I can't recall the date when I served it—somewhere along the 14th or 15th. I could not find the defendant before. I searched in parts of the county here." In answer to a suggestion from the prosecuting officer to go on and state just what he did with reference to searching for the defendant, he stated "that after he heard of the killing he organized a posse of ten or twelve men, and searched in different localities where we thought we would be likely to find the defendant. We tracked him close to Emmettsville, and lost track of him there, and about that time the gentleman who was keeping him concealed sent word or came to Caldwell, and notified parties here. Mr. Campbell, I think, went over and got him. I was searching for him about four days." Cross-examination: "Mr. Campbell delivered him to Mr. Madden. I was not here."

Instruction 42, complained of and assigned as error, reads thus: "The flight of a person immediately after the commission of a crime, or after a crime is committed with which he is charged, is a circumstance which the jury may consider in determining the probabilities for or against him—the probabilities of his guilt or innocence; but the weight to which the circumstance is entitled is a matter for the jury to determine, in connection with all the facts called out or proven on the trial." Instruction 18, as requested by the defendant and refused by

the court, and alleged as error, reads as follows: "You are instructed that evidence of flight of defendant after the killing is admissible, and should be considered by you only for the purpose of showing who committed the alleged crime, and is not to be considered by you for the purpose of determining the degree of the offense, if you find an offense has been committed." In support of his contention that the court erred in giving instruction 42, and refusing his request 18, appellant cites *People v. Ah Choy,* 1 Idaho, 317. We do not find anything in this case to support the contention of the appellant. We think it was proper for the prosecution to show by the sheriff what efforts he made to apprehend the accused, and the court says: "The jury may consider this fact in determining the probabilities for or against him—the probabilities of his guilt or innocence"—all to be considered in connection with other facts and circumstances in the case. We do not think there was error in this instruction or the admission of this evidence, neither do we think it was error to refuse appellant's request No. 18. (See *People v. Flannelly,* 128 Cal. 83, 60 Pac. 670; *People v. Forsythe,* 65 Cal. 101, 3 Pac. 402.) In the latter case, almost the identical language was used as was used by the learned judge in his instruction 42, who tried the case at bar. (See, also, *State v. Seymour,* ante, p. 257, 61 Pac. 1033.)

The next ruling of the court complained of and alleged as error is that the court permitted "William' H. Pope to answer questions as to his statements made to George A. Bryan regarding what transpired at the Bradley residence the night of September 9th, and refused to permit George A. Bryan to answer as to said alleged conversation." The transcript discloses this state of facts. George A. Bryan, recalled as witness on behalf of defendant, testifies as follows: "On the morning of the 10th of September, 1898, I was at Parma. Was working on the roof of Mrs. Stewart's building. I saw the defendant that morning pass the place from 8 to 10 o'clock. He stopped there at the building, and passed a few jovial remarks with me, but I was on top of the building, and don't know what conversation he may have had downstairs. Am acquainted with William Pope. Q. Did you have any conversation with him relative to a visit

made by the defendant to the Bradley house on the night of the 9th of September, 1898? A. Yes, sir. Q. State what that was. (Objected to by the plaintiff as irrelevant and immaterial, and on the further ground that he is seeking to impeach his own witness.) By the Court: In what respect does this contradict Mr. Pope? Counsel for Appellant: It contradicts him in regard to his answer to my question as to what took place in the room that night. Court: That is not what the statute means. Objection sustained." Counsel for appellant cites a long line of authorities holding that a party may contradict his own witness. We recognize this rule as being too well established to be questioned by any court at this time. He also cites a number of authorities to the effect that a party may show that his own witness has made statements contrary to those testified to on the stand, when the testimony given has been against the party calling the witness. We are in full accord with this proposition also. But what are the facts as disclosed by the record here? Counsel for appellant called witness Pope to the stand, and asked this question: "Did you not have a conversation with George A. Bryan the evening of Saturday, September 10, 1898, on the road near Parma, relative to what transpired at the Bradley house on the evening of the 9th of September, 1898, at the time that the defendant was at the Bradley residence, and did you not say to Mr. Bryan at that time that you had the drop on Lyons that night was the reason why he made no demonstrations there at the Bradley residence that night?" This question was objected to by the prosecution as being irrelevant and immaterial, not tending to prove or disprove an issue in the case, and was sustained by the court. It does not appear that counsel for appellant stated, or offered to show, wherein it was relevant or material, or tried to connect the defendant in manner with the conversation, or that defendant ever had knowledge of such conversation before the homicide. It is not claimed defendant was present and heard the conversation, or that it was communicated to him by Bryan or anyone else. Neither does it appear that the deceased had any knowledge of this conversation. This being true, how could it affect the minds or actions of either of the parties to this fatal difficulty? And, if their ac-

tions could in no way be controlled by it, how could it be relevant or material to the issue? We find no error in the ruling of the court on this issue.

The next complaint we find is an alleged error of the court in allowing the prosecution to put a leading question to witness Walter Martin, for the purpose of impeaching the appellant, and afterward refusing to allow the appellant's counsel to cross-examine said witness upon his answer. The defendant, in cross-examination, testified as follows: "The enmity was not on my part rather than on the other. I did not prior to that time complain that the Bradleys had been meddling in my business. I never spoke to Walter Martin in regard to the matter. I did not ask Walter Martin if he knew that Bradleys were going to have me arrested. I did not tell Walter Martin that I heard Bradley was going to have me arrested, nor did I say Bradley was all the time meddling with my affairs, and that I would settle with him soon. There was no feeling on my part against them by reason of their bringing the girl to town here and having a warrant sworn out." For the purpose of impeachment, Walter Martin was called to the stand, and testified: "I remember meeting the defendant at his camp on the tenth day of September, 1898. Q. You may state whether or not while you were at the camp the following language was used by Mr. Lyons and yourself." This question was objected to by counsel for appellant as being leading, "and instructs the witness what he wants." The objection was overruled by the court. "By Prosecuting Attorney: 'Lyons asked me if I knew if Bradley was going to have him arrested. I told him I heard he was, and he said Bradley was all the time meddling with his affairs, said he would settle with him soon.' Was such language used? Answer. Yes, sir. By Counsel for Appellant: Did he say in what way he would settle with him soon? (Objected to by prosecution upon the ground that the defendant had been asked when upon the stand if that conversation occurred, and he said no such conversation occurred, and this examination cannot go further than the question put and answer made; that the defendant denies it, and witness for the prosecution asserts that such conversation did occur.) By the Court: Yes, that ends the inquiry,

I presume." It will be observed that when the defendant was a witness in his own behalf his attention was directed to this alleged conversation, and he denied in plain and unequivocal terms this conversation, or any other conversation with the witness Walter Martin. To impeach the testimony of appellant, witness Martin was called, who testified in positive terms that such conversation did occur. Had the defendant testified that he had a conversation with the witness Martin, but denied that he had used the language imputed to him, then the rule sought to be invoked by counsel for appellant might have some application, and his authorities some bearing on the question involved. We can see no prejudicial error in the ruling of the court on this objection of appellant.

This brings us to the objection of appellant to the seventh instruction given to the jury by the court. It is as follows: "You are not at liberty to disbelieve as jurors if from the evidence you believe as men. Your oath imposes upon you no obligation to doubt when no doubt would exist if no oath had been administered, and, in considering the case, the jury are not to go beyond the evidence to hunt up doubts, nor must they entertain such doubts as are merely chimerical or conjectural." It is contended by counsel for appellant that this instruction does away with the necessity of swearing a jury, and commands them to disregard the binding force of an oath. In *Clark v. Commonwealth,* 123 Pa. St. 555, 16 Atl. 795, in passing upon an instruction very similar to the one in question here, the court said (syllabus): "The court instructed the jury that all evidence is more or less circumstantial, the difference being only in degree, and it is sufficient for the purpose when it excludes disbelief—that is, actual belief; for he who is to pass on the question is not at liberty to disbelieve as juror while he believes as a man." In *People v. Whitney,* 53 Cal. 420, in discussing an instruction of the character of the one here complained of, the court says: "It is not erroneous, though it is useless." We can see no error in giving this instruction.

We have carefully examined instructions 20, 24, 25 and 28 complained of by appellant in his brief, and find no error.

The same is true of instructions 10, 19, 20, 23, 24, 25, 28, 30 and 31. We are of the opinion that these instructions properly define "malice."

Counsel for appellant contends that the court erred in giving instructions 21 and 35, as they mistake the law, and are contrary to instructions Nos. 16 and 18, given by the court on the same matters. Instruction 21 is as follows: "In every crime or public offense there must exist a union or joint operation of act and intent or criminal negligence. When the act committed by the accused was of itself an unlawful act, the law, in the first instance, presumes the criminal intent, and the *onus* or burden of proof falls upon the defendant to show absence of criminal intent; and in this case, if you find from the evidence that the defendant shot the deceased, then the burden of proving circumstances of mitigation, or that justify or excuse the homicide, devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." Instruction 35 is as follows: "The right of self-defense is expressly recognized by our statute, and the conditions under which it may be asserted are clearly defined. These are that the party was not himself the first aggressor, or, if the aggressor, that he had in good faith withdrawn from the contest before he struck the blow or fired the fatal shot; second, that the striking or shooting was necessary to prevent the infliction upon himself of a great bodily injury by the party stricken or shot." Instruction 16 says: "A bare fear of the commission of any of the offenses mentioned in the second and third subdivisions of the preceding instruction, to prevent which homicide may be lawfully committed, is not sufficient to justify it; but the circumstances must be sufficient to excite the fear of a reasonable person, and the party killing must have acted under the influence of such fears alone." Instruction 18 is as follows: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation that justify or excuse it devolves upon him, unless the proof in the case tends to show that the crime committed only amounts to manslaughter, or that the defendant was justi-

fiable or excusable." Subdivision 2, referred to in instruction 16, says: "When committed in the defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends or endeavors, in a violent, riotous, or tumultuous manner, to enter the habitation of another, for the purpose of offering violence to any person therein." Subdivision 3 says: "When committed in the lawful defense of such person, or of the wife, etc., when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and there was imminent danger of such design being accomplished, but such person, or the person in whose behalf the defense was made, if he was the assailant, or engaged in mortal combat, must really in good faith have endeavored to decline any further struggle before the homicide was committed." We see no fault in these instructions. They are copied almost literally from the statute. The instruction numbered 35 says that appellant must have believed that the shooting was necessary to prevent the infliction upon himself of a great bodily injury by the party stricken or shot. This, in our opinion, is the law, and the instructions given by the court lead us to the conclusion that a careful consideration of all the instructions given by the court correctly states the law on every issue involved in the trial of the case, and that there was no error in the refusal of the court to give the instructions requested by appellant's counsel. The action of the lower court is affirmed.

Quarles, C. J., and Sullivan, J., concur.