214 P.2d 159

## STATE v. NEWMAN.
### No. 7519.

Supreme Court of Idaho.
Jan. 24, 1950.

Herman Welker, Payette, and Donart & Donart, Weiser, for appellant.

186

Robert E. Smylie, Attorney General of Idaho, J. R. Smead, Assistant Attorney General of Idaho, J. N. Leggat, Assistant Attorney General of Idaho, Don J. Mc-Clenahan, Assistant Attorney General of Idaho, Donald A. Purdy, Assistant Attorney General of Idaho, and Frank H. Joseph, Prosecuting Attorney, Washington County, Weiser, for respondent.

KEETON, Justice.

Appellant was charged with the murder of one W. E. Wiggins alleged to have occurred July 8, 1948. He was convicted of second degree murder and the court on December 14, sentenced him to serve twenty-four years in the state penitentiary. From the judgment he appeals.

The killing of the deceased Wiggins by appellant is not disputed. He contends he acted in self-defense and assigns as error the refusal to give certain requested instructions, the admission of certain evidence, improper conduct of the prosecution, and the insufficiency of the evidence to sustain the verdict.

On the morning that the deceased was killed appellant went to the Wiggins farm presumably to get a horse belonging to him, which by mistake had been placed in the Wiggins pasture. Wiggins ordered him from the premises and picked up a couple of small rocks, one in each hand, and told appellant to get off the place and kicked him. Appellant then got in his car and drove to the gate of the Wiggins place, a distance of about one-half mile, where he stopped the car. Ten or fifteen minutes afterwards deceased got in his car and started from the pasture corral, where the first trouble occurred, toward home.

When the Wiggins car came near to the Newman car appellant armed himself with a .38 caliber revolver and went over to the Wiggins car, firing two shots, one through the left ventilator pane and one through the windshield of the Wiggins car. The first shot severed a finger of the deceased, and the second struck him in the head, and from which wound Wiggins died.

Appellant claims that when he approached the Wiggins car at the time of the killing, deceased shot at him with a .22 caliber rifle and he, in self-defense, fired the shots which killed the deceased. This contention was disputed by other witnesses.

Assignments of error numbered 1, 2, and 3, refusal of the court to give certain instructions requested by the defendant, will be considered together.

The request had to do with self-defense, apparent danger, actual danger, facing the situation from the defendant's point of view, the right to become an actor and the right to stand one's ground and, if apparently necessary, the right to slay.

Conceding that the instructions requested might correctly cover the law, the instructions requested were fully covered by other instructions given by the court, and to which no exception as to correctness has been taken by the defendant.

Instructions 15 and 19 given by the court covering the right of self-defense are a correct expression of the law. Further, instruction 20 told the jury that the defendant had a legal right to act upon appearances such as would influence a reasonable person, even though it might turn out that no actual danger existed, and that the danger was in fact only apparent.

Instruction 22, given by the court is as follows:

"As a matter of law, a person need not be in actual, imminent peril of his life, or of great bodily harm before he may assault his assailant; it is sufficient if in good faith he has a good and reasonable belief from the facts as they appear to him at the time that he is in such imminent peril." and instruction 23:

"Self-defense is founded upon the law of necessity, and cannot be superseded by any law of society; but self-defense is a defensive, not an offensive act, and it must not in any case exceed the bounds of defense and prevention. There must at least be an apparent necessity to ward off by force some unlawful and violent attack. The important questions for the jury to determine are:

"1. Was the defendant in present danger of death or serious bodily injury, or were the circumstances such as to afford him reasonable grounds to believe himself to be in such danger?

"2. Was the killing in good faith, to protect himself from such danger or threatened danger?

"Unless both of these questions can be answered in the affirmative, the killing would not be in self-defense or justifiable."

Instruction 24: ·

"If the defendant acted in a moment of seeming impending danger, it was not necessary for him to nicely guage the quantity of force necessary to repel the assault, but he had the right to act on appearances and use such force as he had reasonable cause to believe at the time was necessary."

Instruction 25:

"Where one without fault is placed under circumstances sufficient to excite the fears of a reasonable person that another designs to commit a felony or some great bodily injury upon him, and to afford grounds for a reasonable belief as a reasonable man, that there is imminent danger of the accomplishment of the design, he may, acting under these fears alone, slay his assailant and be justified by the appearances. And, as where the attack is sudden and the danger imminent, he may increase his danger by retreat, so situated, he may stand his ground, that becoming his 'wall', and slay his aggressor, even if it be proved that he might more easily have gained safety by flight. So, too, under such circumstances he may pursue and slay his adversary. But the pursuit must not be in revenge nor after the necessity for the defense has ceased, but must be prosecuted in good faith for the sole end of winning his safety and securing his life."

■ These instructions, with others given, are clear statements of the law and cover the instructions requested by the defendant.

■ When the court fully and accurately instructs the jury on all issues involved, it is not error to refuse defendant's requested instructions even though they may correctly state the law; and the subject matter having been fully covered, it is not error to refuse the instructions requested. State v. Lyons, 7 Idaho 530, 64 P. 236; State v. Fleming, 17 Idaho 471, 106 P. 305. Instructions given by the court, taken as a whole, cover all contingencies and situations presented by the evidence.

Testimony was admitted without objection tending to prove illicit relationship between the defendant and the wife of the deceased. The admission of the evidence is assigned as error for the reason, contended by the defendant, that there was no evidence introduced showing that such relationship furnished any motive for the crime or in any way influenced the homicide.

■ Evidence of intimate relationship between the accused and the decedent's spouse is admissible to show motive. State v. Schieler, 4 Idaho 120, 37 P. 272; State v. Maguire, 31 Idaho 24, 169 P. 175; State v. Montgomery, 48 Idaho 760, 285 P. 467.

In the case of Woodson v. State, 30 Ariz. 448, 247 P. 1103, 1105, the court said:

"In the case at bar the undisputed facts certainly made an issue of self-defense for the consideration of the jury. * * * The issue being thus in doubt, we think the evidence of illicit relations between defendant and deceased's wife was admissible as bearing on his true motives and state of mind, when he fired the fatal shot."

For other authorities, see: People v. Fricker, 320 Ill. 495, 151 N.E. 280; Taylor v. Commonwealth, 266 Ky. 325, 98 S.W.2d 928; State v. Fine, 90 Mont. 311, 2 P.2d 1016; People v. Clark, 70 Cal.App. 531, 233 P. 980.

Moreover, the court fully and carefully instructed the jury as to the purpose of this evidence and restricted its consideration by the jury.

Instruction 29 requested by the defendant and given, is as follows:

"You are instructed that the fact that improper relations, however, intimate, may have existed between the defendant and the wife of the said W. E. Wiggins, the existence of such relations would not change the law of self-defense as applied to the defendant, or deprive the said defendant of any of his rights thereunder." and further limited the consideration by the jury of the evidence by instruction 12, as follows:

"Evidence has been introduced upon the trial tending to show illicit and unlawful relations between the defendant and the wife of the deceased, W. E. Wiggins. This evidence is proper for your consideration only for the purpose of determining whether the motive which prompted the defendant to shoot and kill said W. E. Wiggins was the defendant's lawful self-defense, or whether it was some other and unlawful motive."

This is a correct statement of the law.

■ Further the evidence was received without objection and the assignment of error cannot be now raised for the first time in the Supreme Court.

■ Motive, if any, actuated by such illicit relations may be, first, jealousy of husband; second, desire to be free from detection by the husband; third, to remove the husband as an obstacle to the complete gratification of the defendant's wrongful desires, or a combination of all three.

■ Furthermore, it is unnecessary for the state, having first proved the killing to prove a motive. In the case of State v. Schieler, supra, this court states the rule as follows [4 Idaho 120, 37 P. 272]:

"It is not incumbent upon the prosecution to show, in the first instance, any motive for the homicide, further than the same was developed by a proof of the circumstances of the killing. * * *"

The next error assigned is as follows:

"That the prosecutor was guilty of improper conduct in suppressing and not permitting the introduction in evidence of the spectographic report of the Federal Bureau

of Investigation, made after their inspection of the rifle found in the Wiggins' car, and introduced in evidence as State's Exhibit No. 13."

The finding of the government agent who examined the rifle taken from the Wiggins car after the killing, was stipulated. The firearms expert who examined the weapon was Myron Williams. Regarding the .22 rifle, the stipulation of the testimony that the witness would give, if called, is as follows:

"That he examined the 22 repeater rifle admitted in evidence as State's Exhibit No. 13 and he determined the 22 rifle had been fired since it was last cleaned; that he examined the 22 empty shell admitted in evidence as State's Exhibit No. 17, and determined that shell was fired from the 22 Winchester rifle admitted in evidence."

While the record does not bear out the alleged suppression of evidence by the prosecution, the stipulation above entered into is a sufficient answer to appellant's contention.

In assignment No. 6, the appellant challenges the sufficiency of the evidence to sustain the verdict. This assignment needs no extensive discussion. Conceding the facts to be in conflict, the evaluation of the testimony was for the jury. The jury apparently did not believe the defendant's version of the killing. Before approaching the deceased's car, appellant, after having waited about fifteen minutes for arrival of deceased, armed himself with a .38 caliber revolver, went directly to the deceased's car and fired the shots that killed him. The rifle that appellant claims the deceased used was found on the back seat of the car after the killing. The blood and broken glass found on the .22 caliber rifle are explainable on a theory of guilt, and the jury apparently took this view. The evidence as a whole clearly established the appellant's guilt.

While it is unnecessary for the state to prove a motive for the killing sufficient motive was established.

We have carefully examined the transcript of the evidence, the instructions of the court, and the proceedings taken. We find no reversible error.

The judgment is affirmed.

HOLDEN, C. J., and GIVENS, PORTER and TAYLOR, JJ., concur.