STATE, Respondent, v. HARRY J. DUNLAP, 'Appellant.

[235 Pac. 432.]

TRIAL—INSTRUCTIONS TO JURY — CRIMINAL LAW — RECEPTION OF EVIDENCE—"MALICE"—DEFINITION OF.

1. In charging the jury, due regard must be had to the state of the case, the character and amount of proof, and the law as stated to the jury must be applicable to the pleadings and testimony.

2. Where on a criminal prosecution the state introduced evidence tending to show criminal intent on the part of the defendant in procuring firearms, it is admissible for defendant to explain why he secured them and what he intended to do with them.

3. That portion of an instruction in a trial for homicide which reads: "Malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive," is erroneous, as it tends to lead the jury to believe that they would be justified in finding that an act was done with malice if done in anger, whereas, a killing done in anger might amount only to manslaughter.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Defendant was convicted of murder in the second degree. Appeal from the judgment and order denying motion for new trial. *Reversed.*

Bothwell & Chapman, for Appellant.

Appellant was denied the right to explain or rebut the presumption of premeditation and malice created against him by the testimony of the witness Bell as to the loaning of the shotgun to appellant on the morning in question. The refusal of such permission by the court is reversible error. (*State v. Shuff*, 9 Ida. 115, 72 Pac. 664; *Smith v. State*, 46 Tex. Cr. 267, 108 Am. St. 991, 81 S. W. 936; *Crawford v. United States*, 212 U. S. 183, 15 Ann. Cas. 392, 29 Sup. Ct. 260, 53 L. ed. 465; *Spicer v. State*, 188 Ala. 9, 65 So. 972; *People v. Smith*, 151 Cal. 619, 91 Pac. 511; *State v. Rutledge*, 135 Iowa, 581, 113 N. W. 461; *Powers v. Commonwealth*, 114 Ky. 237, 70 S. W. 644, 1050, 71 S. W. 494; *State v. Lively*, 119 La. 363, 44 So. 128; *State v. Wilcox* (Mo.), 179 S. W. 479; *Burlingim v. State*, 61 Neb. 276, 85 N. W. 76; *People v. Van Aken*, 217 N. Y. 532, 112 N. E. 380; *State v. Apley*, 25 N. D. 298, 141 N. W. 740, 48 L. R. A., N. S., 269; *State v. Wilson*, 83 Wash. 419, 145 Pac. 455; *Harris v. State*, 23 Wyo. 487, 153 Pac. 881; *People v. Strause*, 290 Ill. 259, 22 A. L. R. 235, 125 N. E. 339; *Lasater v. State*, 88 Tex. Cr. 452, 227 S. W. 949; *Beauchamp v. State*, 128 Miss. 523, 91 So. 202; *People v. Anderson*, 57 Cal. App. 721, 208 Pac. 204; *Rivera v. State*, 91 Tex. Cr. 404, 239 S. W. 955; *State v. Welch*, 22 Mont. 92, 55 Pac. 927; 2 Wharton's Crim. Evidence, 10th ed., sec. 753, p. 1499; 16 C. J. 544.)

The instructions given and read by the court to the jury in this case effectually deprived appellant of the right of self-defense, indulged in the assumption that appellant provoked the controversy, and improperly and prejudicially misstated the law of self-defense as the same is applicable to

the facts in this case. (*State v. McGreevey,* 17 Ida. 453, 105 Pac. 1047; *State v. Fondren,* 24 Ida. 663, 135 Pac. 265; *State v. Rogers,* 30 Ida. 259, 163 Pac. 912; *Franklin v. State,* 30 Tex. App. 628, 18 S. W. 468; *State v. Perigo,* 70 Iowa, 657, 28 N. W. 452; *McGrew v. State* (Tex. Cr.), 49 S. W. 226; *Varnell v. State,* 26 Tex. App. 56, 9 S. W. 65; *Bassett v. State,* 44 Fla. 2, 33 So. 262; *Matthews v. State,* 42 Tex. Cr. 31, 58 S. W. 86; 21 Cyc. 810.)

A. H. Conner, Attorney General, and James L. Boone, Assistant Attorney General, for Respondent.

Instructions on self-defense should embody the element of necessity for the killing. (*People v. Herbert,* 61 Cal. 544; *State v. Lyons,* 7 Ida. 530, 64 Pac. 236; Brill's Cyc. Cr. Law, sec. 700, p. 1164; 30 C. J. 386; *State v. McCann,* 43 Or. 155, 72 Pac. 137; *Motley v. State,* 105 Ark. 608, 152 S. W. 140.)

The instruction on malice is correct. (*State v. Rogers,* 30 Ida. 259, 163 Pac. 912; *State v. Dolan,* 17 Wash. 499, 50 Pac. 472; *Jackson v. People,* 18 Ill. 269; *Commonwealth v. Webster,* 5 Cush. (Mass.) 295, 52 Am. Dec. 711; *McCoy v. People,* 175 Ill. 224, 51 N. E. 777; *State v. Privitt,* 175 Mo. 207, 75 S. W. 457.)

Instruction No. 24 is correct. (30 C. J. 63, note 26.)

BAUM, District Judge.—Appellant appeals from judgment of conviction of the crime of second degree murder, and from an order denying his motion for a new trial. The information charges the appellant with the crime of murder in the first degree. There was evidence before the jury tending to establish the following facts:

The appellant and deceased, C. A. Russell, were neighbors. On the morning of April 30, 1922, the deceased discovered that his cows were gone. Deceased's daughter Madeline, a girl fifteen years of age, located the cows at appellant's place, where appellant was holding them for damages, and returned home and advised deceased, who directed her to return and inquire as to the damages. She did return to appellant's place and was unable to obtain the cows, where-

upon deceased went to appellant's place on horseback, at about 9:30 A. M., and within a few minutes after his arrival the shooting occurred that occasioned his death. The appellant and his wife were the only eye-witnesses to the shooting. When deceased came to appellant's place, the first person he talked to was his sister, appellant's wife. He made inquiry for appellant who was in the house, and appellant went outside to talk to deceased. Deceased demanded that he be shown the damage done by his cows. Appellant, accompanied by his wife and deceased, examined the place where the cows were feeding, during all of which time deceased was cursing. Deceased was a man of violent temper. Deceased stated that he would not pay the damage and announced that he would get the sheriff, and jumped on the horse and rode away seven or eight rods, then returned and continued to apply curse words to appellant. Deceased rode up to appellant and appellant's wife who were standing close to the door of a granary. Near by was a chopping-block and an ax sticking in the same. Deceased threatened the lives of appellant and appellant's wife and reached down for the ax. Appellant reached in the granary, the door being open, and grabbed a shotgun and pointed it at deceased, and as he did so the gun was discharged, the load entering deceased's body in the back of the shoulder. Deceased rode home and the next morning died from the result of the shot.

Appellant during March had asked a neighbor, Bell, for a gun, and at that time advised Bell what he intended to do with it, but he did not obtain the same. Thereafter appellant's wife made two trips to obtain the gun, but Bell was not at home. On the morning in question, appellant's son obtained the shotgun from Bell, and the same was placed in the granary from which place appellant obtained the same at the time of the shooting. Deceased had threatened appellant's life several times prior to the day of the shooting, and appellant was cognizant of such threats. Appellant was the owner of a rifle, the same being in his house at the time of the shooting.

Some uncertainty exists as to what time the gun was obtained on April 30, 1922. Bell testified differently as to the time appellant's son called for the gun, during the trial in the district court, than he did at the preliminary examination. The account we have given of the happenings on the day in question is not in harmony in every particular with the testimony of some of the witnesses, but it is substantiated by what the accused and others testified to at the trial.

The theory of the state is that appellant took up the cows of the deceased on April 30, 1922, and then directed his son to procure the shotgun from Bell, and that he refused to give the cows to the daughter of the deceased and directed that deceased come in person so that a quarrel could be provoked and that he could slay deceased.

It is contended in assignments of error 4, 5 and 6 that the court erred in not permitting appellant's counsel to inquire of the state's witness Bell, as to the conversation appellant had with Bell relative to borrowing the shotgun, and as to what the conversation was, as well as the conversation had with the state's witness Bell and appellant's son, at the time of loaning the shotgun.

The state produced Bell as a witness and inquired as to when the gun was borrowed and by whom. The question was opened by the state, and under the court's ruling the appellant was denied the right of going into the matter. The state attributed to appellant an evil design and an unlawful purpose in borrowing the gun. We believe the testimony sought to be elicited germane, going to show the intent with which he procured the gun in question. The court, in refusing to permit this testimony to be elicited, committed error, tacitly intimating to the jury that the defendant had no right to explain it except by his own evidence, thereby virtually compelling him to testify. The appellant was entitled to have such testimony as might be elicited from Bell to the jury.

It was stated by our supreme court in *State v. Shuff*, 9 Ida. 115, 72 Pac. 664:

"The second assignment is based upon the refusal of the court to permit a witness for the prosecution on cross-examination to answer the following question: 'State whether at any time within three or four weeks prior to this occurrence you and the defendant were negotiating by which you were to trade a revolver for this rifle.' The witness had previously testified that between two and four weeks prior to the homicide he had a conversation with the defendant, and that defendant told him he had a rifle and wanted to trade it for a revolver he had.

"Counsel for defendant in attempting to explain wherein the question and answer were material made the following statement to the court: Suppose that there was a trade on between these two men to trade this rifle for a pistol, and the defendant on that morning (the morning of the homicide) had brought the rifle up for the purpose of making a trade, that is my object in asking the question.

"We think the learned judge was in error in not permitting the witness to answer. . . . . "

The following authorities support the view of this court in *State v. Shuff, supra; State v. Wisdom,* 119 Mo. 539, 24 S. W. 1047; *Lasater v. State,* 88 Tex. Cr. 452, 227 S. W. 949; *Rivera v. State,* 91 Tex. Cr. 404, 239 S. W. 955; *People v. Van Aken,* 217 N. Y. 532, 112 N. E. 380; *State v. Wilson,* 83 Wash. 419, 145 Pac. 455; *People v. Strause,* 290 Ill. 259, 22 A. L. R. 235, 125 N. E. 339; *State v. Welch,* 22 Mont. 92, 55 Pac. 927; *Smith v. State,* 46 Tex. Cr. 267, 108 Am. St. 991, 81 S. W. 936.

The attorney general in his brief urges that appellant cannot take advantage of the above assignments of error for the reason that no folio number of the transcript is set out after each assignment. One only need look to the statement by appellant, in appellant's brief, to note that the folio number of the transcript is referred to.

Among the instructions to which objections are urged by appellant is instruction No. 12, which is as follows:

"I further instruct you, in relation to the law of self-defense, that one cannot claim its benefits after he has inten-

tionally put himself where he knows or believes he will have to invoke its aid. Circumstances justifying assault, in the law of self-defense, must be such as to render it unavoidable. If you believe from the evidence, and beyond a reasonable doubt, that the defendant could have avoided any conflict between himself and the said C. A. Russell, without increasing the danger to himself, it was his duty to avoid such conflict and so render a resort to the law of self-defense unnecessary."

The above instruction was taken from the case of *State v. McCann*, 43 Or. 155, 72 Pac. 137, and a reading of the case discloses an entirely different state of facts there than is involved in the instant case. There the evidence discloses that the defendant went out of his way and began to strike the prosecuting witness, calling him vile names, and drew his pistol. The latter arose, laid aside a knife with which he had been whittling, and reached for the weapon, following the defendant, who stepped backward and fired. Hence, McCann was conclusively shown to be the aggressor. In the instant case Dunlap was upon his own premises and had committed no unlawful act to precipitate the affray. The jury were also told that if Dunlap could have avoided the conflict between himself and the deceased without increasing the danger to himself, it was his duty to do so, from which the jury might have inferred, in view of the evidence in the case, that he should have given up the cattle upon the approach of the deceased, or have retreated into the house or elsewhere, if by so doing he did not increase the danger to himself. One fatal objection to the instruction was that it declared the legal effect of certain portions of the evidence, which function belonged to the jury, and necessarily excluded from their consideration other facts, proper for their consideration.

Instruction No. 24, as given by the court, is as follows:

"The jury are instructed that the law enjoins upon a defendant who pleads self-defense to show that he had no other probable means of avoiding the danger to himself, of losing his own life or of sustaining serious bodily harm than to act

as he did in this instance, because one who invokes that plea must not only have believed that his life was in danger, or that he was in danger of sustaining some serious bodily harm, but the facts and circumstances under which he formed that belief, or under which he came to that conclusion, must have been such as to cause you to believe that a man of ordinary firmness and courage, situated as he was at that time, would be justified in so believing.''

This instruction enjoined the appellant to do all in his power to avoid the conflict, even to retreating. This was error. (*State v. McGreevey,* 17 Ida. 453, 105 Pac. 1047; *Beard v. United States,* 158 U. S. 550, 15 Sup. Ct. 962, 39 L. ed. 1086.) The court, in the latter part of the instruction, used the following words: ''a man of ordinary firmness and courage,'' while the law of self-defense only requires that he act as a reasonable and prudent man would be likely to act under similar conditions and circumstances, and it cannot be said that the phrase used by the court was synonymous with the phrase that should have been used, and that the jury was not misled thereby.

That portion of instruction No. 29 complained of, as given, was as follows: ''The court instructs the jury that malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. . . . . ''

The giving of an instruction containing the above language has been disapproved by this court in *State v. Rogers,* 30 Ida. 259, 163 Pac. 912, as it tends to lead the jury to believe that they would be justified in finding that an act was done with malice if done in anger, whereas a killing done in anger might amount only to manslaughter.

The court's charge to the jury should contain an instruction to the effect that all instructions contained in the charge of the court should be considered and construed together. In the instant case no such instruction was contained in the court's charge, and we cannot safely say that the jury was not misled by some of the instructions that were given.

Other objections made to the rulings of the court as to admissibility of evidence and to the charge of the court

are raised by the remaining assignments of error, but as the cause must be reversed, and as the questions which they present may not arise upon another trial, no discussion will be had of them.

The judgment is reversed and a new trial ordered.

William A. Lee, C. J., Wm. E. Lee and Givens, JJ., concur.

Budge, J., dissents.