233 P.2d 432

STATE v. LIVESAY.

No. 7770.

Supreme Court of Idaho.

July 3, 1951.

F. C. Keane, Wallace, A. L. Morgan, Moscow, for appellant.

Robert E. Smylie, Atty. Gen., John R. Smead, Asst. Atty. Gen., and Eugene F. McCann, Pros. Atty., Wallace, for respondent.

KEETON, Justice.

By an information filed in the district court, Shoshone County, Jennis Livesay was accused of the crime of murder of the first degree alleged to have been committed on the 1st day of October, 1950. She was tried, Honorable Albert H. Featherstone, Judge, presiding, and by a verdict of the jury dated December 14, 1950, found guilty of manslaughter.

Appellant made a motion for a new trial. Honorable Albert H. Featherstone's term of office having expired and the incoming judge, Honorable Albert J. Graf being disqualified, Honorable O. C. Wilson was designated to hear the motion and if denied impose sentence, and entered an order denying the motion for a new trial, and sentenced the defendant to serve a term of imprisonment in the state penitentiary. Defendant appealed from the judgment of conviction, and from the order denying the motion for a new trial.

By the information above referred to appellant was accused of murdering Donald L. Livesay.

At the time of the alleged slaying, appellant and deceased were wife and husband, living at Mullan in an apartment owned by Jack Swanson, and appellant kept house for him and her husband.

Appellant and deceased had frequent quarrels, and on the day preceding the slaying, deceased was drinking intoxicants and because of a disturbance at the apartment where the parties lived, appellant caused the deceased to be confined overnight in the Mullan jail. On Sunday, October 1st, the day of the alleged murder, deceased came to the apartment of the parties, appellant being home at the time. They had a quarrel, appellant slapped the deceased, and shortly thereafter, the alleged murder occurred. There were no eye witnesses, and the appellant's version of the killing was substantially as follows:

Because of her treatment at the hands of the deceased, appellant decided to leave home, and the deceased threatened her with violence, called her names and said he would teach her to "yell Bull and have me thrown in the can". At this point the appellant, to protect herself, armed herself with a revolver which was taken from a drawer in the apartment of the landlord Swanson and fired a shot which did not hit the deceased, and the appellant testified that she intentionally missed and only fired to scare him. She testified that when she fired the shot that missed: "A. He lunged back in the bedroom and he grabbed hold of the door facing with his hands this way and began sliding down like he had been hit. I said 'All right, cut the comedy and come out of there I know I didn't hit you. I didn't come in feet of you, now that I have this little equalizer you are going outside.' He said, 'All right, put the gun up.' I said, 'No, sir, you're going to hit me for the last time.' Then I started backing toward the door and he looked at me like he was fixing to spring at me and I said, 'Doc,

take a fool's advice, don't you try to jump this gun. Sure as you do one of us will be getting hurt.' Then as I was backing up I took my eyes off him, I glanced off my left shoulder to see where the foot stool was and as soon as I took my eyes off him he jumped me, knocked me on the davenport and as he closed in it throwed the gun towards his body and that is when that second bullet was fired."

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Then what occurred? A. When the bullet was fired he sort of slumped and released my arms and sort of fell.

"Q. Did he fall on top of you? A. He was right against me when the bullet hit him and he fell then."

Appellant, after the shooting, called Swanson and told him: "Bring the law over here. I killed Doc" (referring to the deceased).

■ The appellant's version of the killing was contradicted by state witnesses by threats she allegedly made, by circumstantial evidence, and by impeachment of the appellant by contradictory statements made shortly after the killing, it being the state's theory that the slaying was without justifiable excuse. The question of whether or not the appellant was guilty of murder or some crime included in the charge was, under the testimony which we will not review in detail, a question of fact for the jury to determine. We will confine our discussion to errors argued and assigned by the appellant.

■ Appellant contends that the killing of the deceased was accidental. There was testimony which might warrant the conclusion that the slaying was in self defense, and appellant requested, and the court gave instructions on this point.

In the appellant's first specification of error she challenges the correctness of instruction 13A requested by the state and given by the court, which reads as follows: "The Court instructs you, in relation to the law of self-defense that one cannot claim its benefits after she has intentionally put herself where she knows or believes she will have to invoke its aid. The circumstances justifying an assault, in the law of self-defense, must be such as to render it unavoidable. If you believe from the evidence, and beyond a reasonable doubt, that the defendant sought a meeting with the deceased for the purpose of provoking a difficulty with said deceased, or with the intent to take the life of the said deceased or to do him such serious bodily injury as might result in death, even though she should thereafter have been compelled to act in her own defense. [Sentence incomplete] The law says that, if you invoke the law of self-defense, you must show that you were without fault in bringing about the necessity for the killing."
and claims that it is a misstatement of the law and precludes the defendant from claiming self defense. Further that there is no evidence justifying such an instruction and that it was confusing and mislead-

ing, and deprived her of the right to defend herself if she were at fault in the slightest degree.

Further, appellant claims the third sentence of said instruction is unintelligible, incomplete, meaningless and confusing, and suggests to the jury that if the defendant did the things referred to in said instruction, or any one of them, she was cut off from invoking self defense as a defense to the charge.

The instruction challenged in effect told the jury that if the defendant intentionally put herself where she knew or believed she would have to invoke the aid of self defense, then she could not claim self defense irrespective of what circumstances may or might have intervened.

It should be noted that the defendant was in her own home, where she had a right to be, and the deceased came to the apartment or residence at a time when the defendant was already there.

That part of the instruction which told the jury in substance that one cannot claim the benefits of self defense after she puts herself where she knows or believes she will have to invoke its aid, in effect told the jury that even though the defendant were in her own home with the knowledge or belief that the deceased might come there and that there might be trouble, she could not claim the benefits of self defense irrespective of what might happen.

The instruction further told the jury "the circumstances justifying an assault, in the law of self-defense, must be such as to render it unavoidable", and even though thereafter she were compelled to defend herself from an unlawful attack, she could not justify the killing on the ground of self defense.

Whether or not the defendant sought the meeting, and whether or not she intended to provoke a difficulty, was a question of fact to be determined by the jury. The instruction above quoted would make the killing unjustifiable if she had an unlawful intent or purpose, even though there were no overt act on her part to carry it out.

An instruction in substance the same as that given is found in the case of State v. Dunlap, 40 Idaho 630, 235 P. 432, in which this Court held that the instruction was erroneous.

The instruction invited speculation as to whether or not the defendant had sought a quarrel with the deceased in order to create a real or apparent necessity for killing him.

An instruction which might contain a correct abstract principle of law is erroneous and prejudicial in a case where it has no application to the facts involved. We find the instruction, under the circumstances presented, prejudicial and the error not cured by other instructions given. For supporting authorities see State v. McGreevey, 17 Idaho 453, 105 P. 1047; Gibbons v. Territory, 5 Okl.Cr. 212, 115 P. 129; People v. Roe, 189 Cal. 548, 209

P. 560; People v. Hoffman, 195 Cal. 295, 232 P. 974; People v. Orosco, 73 Cal.App. 580, 239 P. 82; State v. Cox, 55 Idaho 694, 46 P.2d 1093; People v. Hatchett, 63 Cal.App.2d 144, 146 P.2d 469; State v. Dunlap, supra.

■ Bare intent and purpose to provoke a difficulty does not deprive one of the right of self defense. He must do some act or something at the time of the difficulty that does provoke the same. Gibbons v. Territory, supra.

■ The above instruction in substance was held not reversible error in the case of State v. McCann, 43 Or. 155, 72 P. 137. In that case the defendant was conclusively shown to be the aggressor, and the facts under which it was approved and held not to be error are altogether different from the facts shown in the case now before us for consideration. The instruction also excluded from the consideration of the jury other facts proper for them to consider. Further, the third sentence of the instruction is incomplete and meaningless.

■ Appellant assigns as error the giving of instruction 6A. The instruction complained of is as follows:

"In this case the defendant has interposed the defense of self-defense. You are instructed that to justify the defendant in taking a life, under such a defense, it must appear that the danger was urgent and pressing to save her life or to prevent great bodily injury to herself. A bare fear of the commission of the offense, to prevent which defendant used a deadly weapon, it not sufficient to justify it, but the circumstances must be sufficient to excite the fears of a reasonable person, and the defendant must have acted under the influence of such fears alone.

"The defendant is not necessarily justified because she actually believed she was in imminent danger. When the danger is only apparent, and not actual and real, the question is, would a reasonable person under all the circumstances be justified in such belief. If so, the defendant will be so justified. If this was defendant's position, it was her right to repel the aggression and fully protect herself from such apparent danger. If she could have withdrawn safely from the danger it was her duty to retreat. But as, where the attack is sudden and the danger imminent, if to retreat would increase her danger, so situated she may stand her ground, that becoming her 'wall', and to use such force as necessary to repel the force directed toward her, even if it be proved that she might more easily have gained her safety by flight."

The part of the instruction complained of is "If she could have withdrawn safely from the danger it was her duty to retreat". Appellant contends that under her theory of the case, the gun was discharged accidentally when the deceased violently embraced the appellant.

The appellant submitted instructions covering the law of self defense, therefore the

instruction given cannot be said to be foreign to any issues presented.

 While this instruction standing alone might be subject to objection, when considered with other instructions given, it was not reversible error. Instructions must be considered as a whole.

An instruction covering the situation and approved is found in State v. Newman, 70 Idaho 184, 214 P.2d 159, 161, and uses the following language: " * * * as where the attack is sudden and the danger imminent, he (defendant) may increase his danger by retreat, so situated, he may stand his ground, that becoming his 'wall', and slay his aggressor, even if it be proved that he might more easily have gained safety by flight." See also People v. Lewis, 117 Cal. 186, 48 P. 1088.

Appellant contends that there was no evidence to justify a verdict of manslaughter either voluntary or involuntary. Hence the question of manslaughter could not properly be submitted to the jury.

 The same contention made here was advanced in the case of State v. Ellis, 70 Idaho 417, 219 P.2d 953, and was answered adversely to appellant's contention. Every charge of murder necessarily includes manslaughter. State v. Hix, 58 Idaho 730, 78 P.2d 1003. Even where there is no evidence to show a lesser rather than a greater crime, it is still within the province of the jury to find the defendant guilty of any crime included in the information, and the assignment of error

and argument of appellant is not well taken on this contention. See State v. Schieler, 4 Idaho 120, 37 P. 272; State v. Alcorn, 7 Idaho 599, 64 P. 1014, 97 Am.St.Rep. 252; State v. Phinney, 13 Idaho 307, 89 P. 634, 12 L.R.A.,N.S., 935, 12 Ann.Cas. 1079.

 In the case before us the court properly instructed the jury on the elements of murder in the first degree, murder in the second degree and manslaughter, both voluntary and involuntary. The instructions so given are correct. The charge of murder necessarily includes the lesser offenses.

The giving of instruction 13A above set out being erroneous and prejudicial, the judgment is reversed and a new trial ordered.

GIVENS, C. J., and PORTER, TAYLOR and THOMAS, JJ., concur.