418 P.2d 210

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Doris Lucille ANSTINE, Defendant-Appellant.**

**No. 9715.**

Supreme Court of Idaho.

Sept. 21, 1966.

William S. Hawkins and Paul D. Mc-Cabe, Coeur d'Alene, for appellant.

Allan G. Shepard, Atty. Gen., Weldon S. Wood, Asst. Atty. Gen., Boise, Pat W. Arney, Pros. Atty., Kootenai County, Coeur d'Alene, for respondent.

McFADDEN, Chief Justice.

Appellant, Doris Lucille Anstine, was charged with the first degree murder of her husband Elmer Anstine. After being bound over to district court, she plead not guilty to the charge and was tried before a jury which returned a verdict of "Guilty of the crime of voluntary manslaughter." The trial court entered its judgment on this verdict and sentenced her to serve a term of not to exceed five years in the state prison. Appellant appealed from this judgment and from the court's order denying her motion for new trial.

On January 14, 1965, Mr. and Mrs. Elmer Anstine, who lived a few miles west of Rathdrum, Idaho, spent the evening at

the Shady Rest Tavern in Rathdrum, during which time they had about four quarts of beer, Mr. Anstine drinking the greater amount of the beer. While there they quarreled over several matters, but without any display of violence. At about 11:30 P.M., they returned to their home, Mr. Anstine driving their pick-up truck.

Upon arriving home they found the fire in the heating stove had burned out and Mr. Anstine became incensed with appellant because she let the fire burn out. He resumed drinking beer and continued to argue and berate her. Mrs. Anstine previously that afternoon had prepared a dinner and was getting it ready to serve. The effects of the beer Anstine had consumed became more evident, and he became more incensed at his wife. He slapped her, knocking out her dentures. He went into a bedroom adjoining the kitchen and got his hunting rifle and, while standing with it in the doorway, started to wave the rifle at Mrs. Anstine. Mrs. Anstine stated she was afraid, not of her husband firing the weapon, but of his hitting her with the butt of the gun. He then replaced the gun in a far corner of the bedroom and came back to work with the stove to get the fire going. He continued to curse and berate her, and she went into the bedroom, picked up the gun from the far corner and brought it to a point near the door from the kitchen to the bedroom. He continued cursing and she brought the gun out, holding it by the barrel. This calmed him down a little, and she replaced the gun in the bedroom. In a few minutes, Anstine again continuing with his belligerent attitude and cursing, Mrs. Anstine again got the gun. Mr. Anstine was still trying to get the fire going in the heater, and he saw her with the gun, rose from his work and started toward her. She testified that she started to back up, hit a cooking range, and heard the gun fire. Mr. Anstine fell, having been hit in his chest by a bullet which passed through his body, and which bullet was later recovered by the investigating officers. She tried to administer aid to him, and then

went back to the Shady Rest Tavern for help.

The proprietors of the tavern called the officials, and after a deputy sheriff, deputy prosecuting attorney and the sheriff arrived, they all then went to the Anstine residence, and determined that Anstine was dead.

Appellant in her brief makes some twenty-one assignments of error, all of which are directed to instructions given by the court to the jury or the refusal of the court to give certain requested instructions.

Assignment of error No. 1 attacks Instruction No. 6, wherein the trial court discussed and defined the difference between circumstantial evidence and direct evidence. Appellant asserts that there was no direct evidence submitted, but that the whole case was one of circumstantial evidence, and the giving of this instruction would indicate to the jury that the trial court believed there was direct evidence of appellant's guilt. We do not agree with this assertion. The appellant herself testified as to the events leading up to and concerning the fatal shooting. This was direct evidence. State v. Riggs, 61 Mont. 25, 201 P. 272 (1921); State v. Blackwelder, 182 N.C. 899, 109 S.E. 644 (1921). There was no error in giving this instruction.

Assignment of error No. 2 attacks the giving of Instructions Nos. 8 and 31 on confessions, admissions and differences between them. Appellant claims there was no evidence of either confession or an admission and by the giving of these instructions, the jury was misled into believing appellant had confessed or admitted to some element of the crime. Appellant testified in detail as to the events of the shooting, how the gun was held, where the deceased was standing, and what he was doing. Several of the witnesses for the prosecution testified as to what appellant had told them following the shooting. Instruction No. 8, given by the court, advised the jury that the guilt of a defendant in a criminal action could not be based solely on an admission or

confession, but that there must be independent evidence of the crime. This instruction was favorable to the appellant herein. Instruction No. 31 discussed the fact that there was evidence of statements made by appellant to others. The instruction fairly apprised the jury of the law in this regard, and discussed the law as it applied to the "alleged crime or one of the lesser included offenses." While the statements made by appellant would not constitute a confession, they were in the nature of admissions. It was not error to give these instructions which would in effect dispel any thought that appellant might have "confessed" to the crime with which she was charged. The trial court did not err in this regard.

█ Assignment of error No. 3 is directed to the giving of a portion of Instruction No. 9, which instructed the jury on impeachment of witnesses. Incorporated in the instruction was the statement that "a witness may be impeached also by proof that he has been convicted of a felony." There was no attempt made by either side to impeach the testimony of any witness in this manner. The questioned portion of the instruction was irrelevant, but the record fails to show any prejudice to appellant resulting therefrom. The burden is on an appellant to show that error was committed of a character sufficiently serious to warrant a reversal. State v. Mundell, 66 Idaho 297, 158 P.2d 818 (1945).

██ Assignment of error No. 4 is directed to the giving of Instruction No. 12, wherein the trial court reiterated to the jury the charging part of the information, but did not advise the jury that appellant had plead "not guilty" to the charge. Appellant also claims that this charge was prejudicially repetitious of the charge which had already been read to them in the information. At the very outset of the case, after the jury was sworn, the clerk of the court read the information to the jury and advised them that appellant was under no obligation to prove her innocence, but that the State had the burden of proving her

guilty beyond a reasonable doubt. There was no prejudicial error committed by failing to advise the jury in this that appellant had plead "not guilty" to the charge described, especially when in the first instruction the court did state the function of the jury is to try the issues of fact presented by the allegations of the information and the defendant's plea of "not guilty." There is no merit to the claim that this instruction was prejudicially repetitious. I.C. § 19–2101(1) requires the clerk at the outset of the trial to read the information to the jury and announce the defendant's plea. For the trial court's instructions to be meaningful, a statement of the allegations of the information is correct.

█ Assignment No. 5 attacks instructions Nos. 15 and 19. Instruction 15, in the language of I.C. § 18–4001, defines the crime of murder, then gives the statutory definition of malice (I.C. § 18–4002), and finally, in the language of I.C. § 18–4003, states the degrees of murder. Instruction 19 explains the distinction between murder in the first and second degrees and manslaughter. Appellant contends that these instructions were erroneous because there was no evidence of "lying in wait, poison, torture, arson, rape, robbery, burglary, kidnapping or mayhem," as used in the instructions, and use of these terms in the instructions was prejudicial, being repetitive and having a cumulative and adverse effect upon the jury. In State v. Brooks, 49 Idaho 404, 409, 288 P. 894 (1930) this court stated:

> "Ordinarily, the language employed by the legislature in defining a crime is deemed to be best suited for that purpose, and error cannot be predicated upon its use in informations and instructions."

Even though the terms employed may have been repetitive, it is difficult to see how a jury would be adversely affected and the appellant prejudiced by their use.

█ Assignment No. 6 is directed to the claimed repeated use of the word "slayer" in Instructions Nos. 16 and 28, appellant contending that the use of this word was

prejudicial to the appellant—the term "slayer" was employed in each of these instructions on two occasions. It was also employed in Instruction No. 41 on two occasions. The term "slayer" has reference to one who kills. It does not necessarily import that criminal means was employed in the act. In the instructions the term was used in an abstract discussion of the law involved, and was an appropriate word to be used for the meaning sought to be conveyed. We see no error in this regard.

■ Assignment No. 7 reads:

"The court erred in giving Instruction No. 20, for the reason that in instructing that the correction ordained for Manslaughter is proportionately lenient, the Court is violating its own instruction that the jury is not to consider punishment except that of life imprisonment or death in the case of First Degree Murder. This would have the effect of leading the jury to believe that the Court would be proportionately lenient if they found her guilty of Manslaughter."

In the challenged instruction the court stated:

"Manslaughter is distinguishable from murder principally in this: That though in manslaughter the act which occasions the death be unlawful or likely to be attended with bodily mischief, yet the malice, either express or implied, which is an essential element of murder, is wanting, and the act being imputed to the infirmity of human nature, the correction for it is proportionately lenient."

By Instruction No. 44, the court charged the jury that:

"* * * the subject of penalty or punishment is not to be discussed or considered by you * * * and must not in any way affect your decision as to the innocence or guilt of the defendant of any offense less than murder in the first degree."

Thus, the jury was advised that (aside from murder in the first degree) the matter of punishment was beyond its province to consider. The explanation by the court in Instruction No. 20 that "the correction for it [manslaughter] is proportionately lenient," was correct (I.C. § 18-4007 as compared to I.C. § 18-4004). The challenged statement, explanatory in nature, could not have misled the jury to appellant's prejudice.

■ Assignment No. 8 attacks Instruction No. 22 upon the ground that it is prejudicially repetitive of Instruction No. 21, in that it repeats and re-emphasizes, from a prosecution viewpoint, the non-existent "heat of passion" requirement to reduce an intentionally felonious homicide from the offense of murder to manslaughter. With this contention we do not agree. These two instructions dealt with the definition of manslaughter and elements or lack of elements which distinguish it from murder. In fact, the instruction as given was favorable to the appellant, setting forth the law under which an intentional homicide can be considered not as "murder" but as manslaughter on the basis of a sudden quarrel or "heat of passion," which eliminates the malice from the act, which malice if present, would be an element essential to constitute the crime of murder.

■ Assignment No. 9, directed to Instruction No. 30, to the effect that when the evidence shows a person has assailed another violently with a dangerous weapon likely to kill, such evidence gives rise to a presumption the assailant intended death, but that such presumption may be overcome by contrary evidence. Appellant contends that this required her to produce evidence for the purpose of creating a reasonable doubt. We do not agree with this contention. The instruction as given correctly states the rule that intent to kill may be presumed from the evidence of the unlawful use of a deadly weapon, which presumption may be rebutted. In State v. Buchanan, 73 Idaho 365, 374, 252 P.2d 524, 530 (1953), this court quoted with approval the following:

"'An inference of the requisite intent, in an assault with intent to murder, generally may be made from the unlawful use of

a deadly weapon, provided it was used in a way to indicate an intention to kill. * * *' 40 C.J.S., Homicide, § 79, p. 944."

Assignment No. 10 reads:

"The court erred in giving instruction No. 32 for the reason that it instructs on accountability and the Defendant's ability to differentiate right from wrong when no plea of insanity was entered nor in evidence."

Appellant does not assert that this instruction on criminal accountability of a defendant fails to correctly state the law, but only that it was inapplicable in this case. Appellant in support of this contention quotes from State v. Livesay, 71 Idaho 442, 447, 233 P.2d 432, 435, as follows:

"An instruction which might contain a correct abstract principle of law is erroneous and prejudicial in a case where it has no application to the facts involved."

However, the court therein continued with the following language:

"We find the instruction, under the circumstances presented, prejudicial and the error not cured by other instructions given."

In the case of State v. Madrid, 74 Idaho 200, 259 P.2d 1044 (1953), the court dealt with a contention similar to the one here presented. There this court stated at page 206, 259 P.2d at page 1047:

"It was error to give such instruction for the reason there was no evidence in the record to which it could be applied. While the giving of such instruction was erroneous, it was not prejudicial."

The supreme court of California has considered such a contention in the case of People v. Roe, 189 Cal. 548, 209 P. 560 (1922), wherein it is stated:

" * * * the charge of the trial court may not, without error, even though correctly stating abstract legal principles, be extended beyond such limitation to the point of covering an assumed issue which finds no support in the evidence, or which the undisputed evidence in the case shows does not exist.

" * * *

"There may be, of course, exceptional cases in which an inapplicable instruction will not operate to the prejudice of a defendant in a criminal case, but when it is clear, as it seems to us in the instant case, that such instructions are well calculated to mislead a jury, and in all likelihood affected their conclusion to the prejudice of the defendant upon the only issue in the case, the giving thereof, even though correct in principle, constitutes error equally as grave as would be the giving of instructions fundamentally wrong."

Other California cases have concluded that the giving of an instruction that correctly states the law, but is inapplicable to the facts or issues before the court, is error, but that prejudice must be shown in order to constitute it reversible error. See: People v. Van Eyk, 56 Cal.2d 471, 15 Cal. Rptr. 150, 364 P.2d 326 (1961), (Cert. denied 369 U.S. 824, 82 S.Ct. 838, 7 L.Ed.2d 788); People v. Matula, 52 Cal.2d 591, 342 P.2d 252 (1959); People v. Guldbrandsen, 35 Cal.2d 514, 218 P.2d 977 (1950).

The statement in State v. Livesay, supra, that "An instruction which might contain a correct abstract principle of law is erroneous and prejudicial in a case where it has no application to the facts involved," is not a full statement of the rule. The rule also requires that prejudice be shown to the defendant before a case can be reversed because of the giving of an instruction not applicable to either the facts or issues involved.

It is our conclusion that no actual prejudice was shown by the court's giving of this instruction, although it should not have been given in the absence of facts or issues justifying its being given.

Assignment No. 11 is directed to the court's Instruction No. 33 which defined the right of self-defense, and instructed on

that element of self-defense where the accused is the aggressor. Appellant in assignment No. 12, contends that there was no evidence in the record to justify the giving of Instruction No. 34 which also discusses the matter of self-defense, appellant contending such instruction is unclear and confusing. By assignment No. 13 appellant asserts that the trial court erred in giving Instructions Nos. 35 and 37 which advised the jury that the right of self-defense exists only as long as the real or apparent threatened danger continues to exist. Assignment No. 14 is directed to the giving of Instruction No. 39 which also deals with the right of self-defense, appellant contending it is repetitious. Assignment of error No. 15 is directed to Instructions Nos. 40 and 42, which advised the jury on other aspects of the right of self-defense. Assignment of error No. 16 is directed to the giving of Instruction No. 41, claiming it is repetitious of previous instructions on self-defense and further that it repeats the word "slayer." Assignment of error No. 17 is directed to Instruction No. 28 and to Instructions Nos. 33 and 42, all pertaining to the right of self-defense; appellant also assigns as error the refusal of the trial court to give requested instruction pertaining to the same subject matter.

 Insofar as these last assignments of error (11 through 17 inclusive) are concerned, there appears to be no error in the giving of these instructions or in the refusal to give appellant's requested instruction. Although it is contended that only instructions on the right of self-defense submitted by the prosecution were given, that they were negative in nature and "prosecution slanted," we do not concur in such contention. Appellant does not claim that these instructions erroneously stated the law. The instructions as given covered the numerous facts involved in the right of self-defense, and were designed to encompass the various views that jurors might individually take of the evidence. It is a rule of long standing in this court that a trial court may properly refuse an instruction where the subject matter has been covered by the instructions given. State v. Newman, 70 Idaho 184, 214 P.2d 159 (1950); State v. Hewitt, 73 Idaho 452, 254 P.2d 677 (1953); State v. Nesbitt, 79 Idaho 1, 310 P.2d 787 (1957); State v. Puckett, 88 Idaho 546, 401 P.2d 784 (1965). Appellant's requested instruction on self-defense was fully covered by the instructions given.

 Assignment of error No. 20 is directed to the refusal of the trial court to give two of appellant's requested instructions. This assignment of error is not supported by citation of authority or by argument, and hence will not be considered. State v. Richardson, 56 Idaho 150, 50 P.2d 1012 (1935); State v. Mundell, 66 Idaho 339, 158 P.2d 799 (1945); State v. Scrivner, 66 Idaho 498, 162 P.2d 897 (1945); State v. Coburn, 82 Idaho 437, 354 P.2d 751 (1960).

 Assignment of error No. 21 is directed to the refusal of the trial court to give appellant's requested instruction for an advisory instruction to acquit. This assignment is without merit. In State v. Dickens, 69 Idaho 497, 498, 210 P.2d 384 (1949), this court reiterated the rule:

"It has been uniformly held in this state that refusal of the trial court to give an advisory instruction to acquit is not reversible error, nor is it reviewable in this court."

See also: State v. Puckett, 88 Idaho 546, 401 P.2d 784 (1965) and cases therein cited.

In viewing the record as a whole, appellant was tried by a jury which had been given detailed and comprehensive instructions which fairly and correctly stated the law.

Judgment affirmed.

McQUADE, TAYLOR and SPEAR, JJ., and FELTON, District Judge, concur.