No. 44,902

STATE OF KANSAS, *Appellee*, v. EDNA MAE BOOKER, *Appellant*.

(434 P. 2d 801)

Opinion filed December 9, 1967.

*Russell Shultz,* of Wichita, argued the cause, and *Larry Kirby,* of Wichita, and *Leonard Watkins,* of El Dorado, were with him on the briefs for the appellant.

*Donald Foster,* Deputy County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, *Keith Sanborn,* County Attorney, and *A. J. Focht,* Deputy County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is a second appeal by the defendant, Edna Mae Booker, from a second conviction of first degree manslaughter. Our opinion in the first appeal is reported in *State v. Booker,* 197 Kan. 13, 415 P. 2d 411, and will be referred to in the course of this opinion.

The defendant was charged with the first degree murder of her husband, James Booker, by shooting him with a pistol at 5 p. m. on March 8, 1965, in their home in Wichita. She was tried by a jury and convicted of manslaughter in the first degree. (K. S. A. 21-407.) On appeal the first conviction was reversed and the case remanded for a new trial. The defendant was again tried on a charge of first degree murder and again convicted of manslaughter in the first degree. Defendant's motion for a new trial was heard

and overruled and thereafter the current appeal was perfected.

The essential facts of the unhappy married life of defendant and her deceased husband were related in our first opinion and will not be repeated in detail. The evidence at the second trial was essentially the same as that submitted in the first trial and, as summarized in our first opinion, is incorporated by reference herein. Pertinent portions of the evidence, relative to the issues raised in the current appeal, will be pointed out in the course of this opinion.

The final and fatal affray between defendant and the deceased stemmed from marital conflict involving defendant's admitted infidelity with another man, Charles F. McElroy a Sergeant in the Air Force. The theory of the prosecution, as presented in the trial, was that McElroy obtained the pistol used in the shooting, gave it to defendant, and planned with her to arrange a situation in which the husband could be disposed of by defendant while acting in self-defense. The prosecution claimed defendant provoked her husband into the affray and then armed herself and killed him rather than leaving through the front door of the house which opened from the room in which the shooting took place.

The defendant claims she acted in self-defense. At the trial she advanced as her theory the proposition that because of previous threats and physical abuse by her husband she was in danger of harm to her person in the final encounter and, therefore, justified in firing the fatal shots in self-defense.

Ten points of error are specified by defendant and will be considered in the order presented.

Defendant first contends the court erred in admitting in evidence two photographs of the body of the deceased. The exhibits complained of are black and white photographs taken during a postmortem examination of the body of deceased. Defendant admits in her brief that a proper cautionary instruction was submitted in which the jury was admonished not to allow the appearance within the photographs to cause passion or prejudice in their minds against the defendant. The sole argument advanced on this point is that the photographs were unnecessary to show the cause of death and were introduced solely to inflame the minds of the jurors.

The photographs were used by Dr. Karl M. Neudorfer, a pathologist, who performed the autopsy to demonstrate to the jury the paths taken by the bullets through the body of the deceased. Under

the opposing theories advanced by the parties during the trial of the case the relative positions of the victim and defendant at the time of the shooting became one of the controlling issues. Dr. Neudorfer testified in considerable detail as to the relative position of the gun and the body of the deceased and demonstrated by using the photographs to show the paths of the bullets in explaining his conclusions. The photographs for such purposes were obviously relevant and material. Even though gruesome, photographs properly identified, as representing physical objects which constitute a portion of a transaction which serve to unfold or explain it, may be exhibited in evidence whenever the transaction is under judicial investigation. (*State v. Zimmer*, 198 Kan. 479, 426 P. 2d 267, cert. den. [36 U. S. Law Week, Misc. 552, p. 3189], 389 U. S. 933, 19 L. Ed. 2d 286, 88 S. Ct. 298; *State v. Turner*, 193 Kan. 189, 392 P. 2d 863; *State v. Stubbs*, 186 Kan. 266, 349 P. 2d 936, cert. den. 363 U. S. 852, 4 L. Ed. 2d 1734, 80 S. Ct. 1632; *State v. Spencer*, 186 Kan. 298, 349 P. 2d 920; *State v. King*, 111 Kan. 140, 206 Pac. 883; *State v. Sweet*, 101 Kan. 746, 168 Pac. 1112.)

Defendant next makes a twofold attack on the trial court's instruction on first degree manslaughter. It is first argued the instruction should not have been given at all and second that the instruction given was incorrect. Defendant argues there was insufficient evidence here to justify the instruction. As we have indicated, prosecution evidence related in our opinion in the previous appeal is substantially the same as that disclosed in the record here. In the previous opinion (*State v. Booker*, supra), after reviewing the evidence, we stated:

". . . The jury was correctly instructed that the charge of murder in the first degree in this case included murder in the second degree and manslaughter in the first, third and fourth degrees. . . ." (p. 15.)

While instructions given should be based on the evidence in the case (*State v. Jensen*, 197 Kan. 427, 417 P. 2d 273; *State v. Diggs*, 194 Kan. 812, 402 P. 2d 300; *State v. Linville*, 148 Kan. 142, 79 P. 2d 869) in a homicide prosecution where the evidence presents circumstances from which a lower grade of homicide might be inferred the court must instruct in such lower degree. We believe, under the evidence before the trial court in this case, failure to so instruct would have amounted to reversible error in a prosecution for first degree murder. Eye witness testimony of the shooting consisted of only that of defendant and a view of a part of the shooting by

Wilda Farley. Wilda is a daughter of defendant by a previous marriage. Her age is not shown, however, she testified she was in the seventh grade in Junior High School. She was in the kitchen when she heard her mother and stepfather arguing. When she heard a gun shot she ran into the living room. Her testimony is narrated by defendant as follows:

". . . she went into the living room and saw her Mother and Father struggling over the gun over in the corner of the living room. She said she ran into the living room and saw the lamp fall and heard it break and she got the smaller children and took them behind the planter or into the kitchen. She said that when she ran into the living room that her Father had said 'Your Mother has shot me' and he was lying in front of the couch and he sort of doubled up and then straightened out. She quoted the Decedent as saying her Mother was trying to kill him. She stated further that she saw her Mother fire the gun and the bullet hit the table and ricocheted off the table at the time when the Decedent was on the floor. She said that her Mother was standing by the stereo at the time the Decedent was lying on the floor. She was firing the gun; she didn't know how many times the gun had fired but the defendant was standing up crying and immediately went in and called for an ambulance in the kitchen. . . ."

Defendant described the shooting as narrated in her abstract in the following manner:

"When she arrived home from work she was met by the decedent who insisted that they go to the store. When they returned the defendant asked her daughter to prepare supper. The defendant went into the bedroom and left her purse but because of the abusive language that the decedent was using she placed the gun in her coat pocket, loaded and with safety catch off. When the decedent kept up his abusive name calling and language she told him that she had a gun. She did so because she hoped that this would control him as she was unable to get out of the house or to get to a phone to call a policeman. He kept calling her names and then came for her saying, 'If you don't get out, right out of here I'm going to —,' at this point she pulled the gun and fired. The next shot was fired while they were scuffling and she was across a chair, but she does not know when the rest of the shots were fired but that she remembers that after the second shot she told the decedent that there were more shots in the gun. She testified that she started pulling the trigger as soon as she was loose from him but that she did not see him fall. When she opened her eyes he was on the floor. . . ."

She also denied any plan or intent to kill the deceased.

On cross-examination she admitted her husband might not have heard when she told him she had a gun. She also admitted her affair and sexual intercourse with Sergeant McElroy. She further testified that she had considered a divorce because she had no feeling left for her husband.

Dr. Neudorfer testified that in the case of three of the wounds the gun would necessarily have been higher than the entrance of the bullets into the body and that none of these three were contact wounds.

The prosecution also offered testimony of several acquaintances and neighbors of the parties as to the relationship of defendant and Sergeant McElroy and conversations with defendant in which she stated she no longer felt any need to have a relationship with deceased.

Under the evidence, as developed in this case, what was the state of defendant's mind, were the shots fired in self-defense and who was the aggressor, were all questions for the jury. In such cases much is left to inference and when the circumstances afford grounds for an inference of a lower grade of homicide the court cannot refuse to instruct in such lower degree. (*State v. Allen*, 98 Kan. 778, 160 Pac. 795; *State v. Truskett*, 85 Kan. 804, 118 Pac. 1047; *State v. McAnarney*, 70 Kan. 679, 79 Pac. 137.)

Our statute K. S. A. 21-407, defining manslaughter in the first degree, with reference to the question presented here, was first construed in *State v. Spendlove*, 47 Kan. 160, 28 Pac. 994 (1891). It was held:

"Section 12, Chapter 31, of the act relating to crimes and punishments, (¶ 2133, Gen. Stat. of 1889,) is expressly applicable to all crimes or misdemeanors, not amounting to a felony, and an assault and battery is within the statute. Intentional violence upon the person killed is not excluded by the statute." (Syl. ¶ 2.)

The construction given to the statute in *Spendlove* was followed in *State v. Merriweather*, 136 Kan. 337, 15 P. 2d 425, where—as here—the charge was first degree murder and the conviction was first degree manslaughter. In discussing the matter with which we are concerned it was stated:

"As indicated, the jury found defendant guilty of manslaughter in the first degree, instead of guilty of murder in the first degree. The conviction necessarily rested on an instruction given pursuant to R. S. 21-407, applicable if the jury should find defendant was engaged in the perpetration of, or an attempt to perpetrate, a crime or misdemeanor not amounting to a felony. Defendant complains because manslaughter in the first degree was thus submitted to the jury. The evidence was susceptible of an interpretation warranting the instruction. It was not necessary that the 'crime or misdemeanor not amounting to a felony' should be independent of and separate from the homicide, and defendant would have had good ground to complain if the instruction had not been given. (*State v. Spendlove*, 47 Kan. 160, 28 Pac.

994; *State v. Bassnett*, 80 Kan. 392, 102 Pac. 461.) In case of murder in the first degree, committed in perpetration of or attempt to perpetrate 'arson, rape, robbery, burglary or other felony' (R. S. 21-401), the elements constituting the 'other felony' must be distinct from the homicide itself, the same as when arson, rape, robbery or burglary is involved. (*State v. Fisher*, 120 Kan. 226, 243 Pac. 291.)" (pp. 338, 339.)

In the instant case, after giving a general preliminary instruction to the effect that where an offense charged consists of different degrees the jury may find the defendant not guilty of the degree charged and guilty of any degree inferior thereto, the court proceeded to recite the statutory definition of manslaughter in the first degree and later defined the critical terms set out in the statute. We believe the jury was adequately informed as to the elements of manslaughter in the first degree in the instruction referred to and that the evidence was sufficient not only to warrant but require the submission thereof.

The defendant next complains of the submission of Instruction No. 15. It reads:

"You are instructed that it is against the laws of the State of Kansas for one not an officer of the law or a deputy under such officer, to carry on their person in a concealed manner a pistol or any other deadly weapon.

"You are further instructed that the defendant in this case, Edna Mae Booker, is not on trial for carrying a concealed weapon. Evidence purporting to show she did carry a concealed weapon can be considered by you only for the purpose of determining defendant's intention in carrying the weapon."

In defendant's first appeal complaint was made concerning the concealed weapon instruction. We reversed for the reason the admonition limiting the jury's consideration only for the purpose of determining defendant's intention in carrying the weapon was omitted. (*State v. Hartsock*, 140 Kan. 428, 37 P. 2d 36.) The error was rectified in this trial. (*State v. Post*, 139 Kan. 345, 30 P. 2d 1089.) In a prosecution for murder in the first degree where theories of the prosecution and defense are developed, as they were by the evidence in this case, we do not believe the instruction is prejudicial when its application is properly limited to the issue of intent.

Defendant next complains as to the trial court's Instruction No. 18 concerning self-defense. It is admitted the instruction is a correct statement of law but defendant complains the final paragraph is not applicable to this case and is prejudicial to the defendant. Defendant argues there was no evidence whatsoever that she was

the aggressor. The state argues that the evidence is sufficient for the jury to infer the defendant armed herself and deliberately precipitated a situation where she knew it might be necessary for her to use the pistol. Defendant by her own testimony admitted that early in the fatal affray deceased told her to leave and that she remained. Defendant's daughter, Wilda Farley, testified that when she came in the room she saw her mother standing over the deceased shooting the gun down at the floor toward him. A scrutiny of the evidence leads us to believe that a fair question as to who was the aggressor remained for the jury's determination. Under such circumstances the portion of the instruction complained of was appropriate.

Defendant cites the case of *State v. Ridge,* 144 Kan. 402, 61 P. 2d 109, in which a self-defense instruction, somewhat similar to that submitted here, was held erroneous. The cases are clearly distinguishable. In *Ridge* there was no evidence tending to show defendant provoked the affray resulting in the homicide. In fact, the evidence in *Ridge* disclosed defendant was attempting to avoid even meeting the victim. Under the facts in *Ridge* there was no jury question as to who was the aggressor. The instruction on self-defense submitted here substantially conforms to that approved in *State v. Ball,* 110 Kan. 428, 204 Pac. 701. Discussion of the application of an instruction on self-defense, where a defendant is the aggressor or where the question of who is the aggressor is to be resolved, may be found in *State v. Pfeifer,* 143 Kan. 536, 56 P. 2d 442; *State v. Allen,* 107 Kan. 407, 191 Pac. 476; *State v. Schroeder,* 103 Kan. 770, 176 Pac. 659; and *State v. Yeater,* 95 Kan. 247, 147 Pac. 1114.

Defendant also complains of Instruction No. 13 dealing with justifiable homicide. The court instructed generally in the terms of the statute (K. S. A. 21-404):

"Section 21-404 of the Kansas Statutes Annotated provides:

" 'Homicide shall be deemed justifiable when committed by any person in either of the following cases: First, in resisting any attempt to murder such person, or to commit any felony upon him or her in any dwelling house in which such person shall be or second, when committed in the lawful defense of such person when there shall be a reasonable cause to apprehend a design to commit a felony or to do some great personal injury and there shall be immediate danger of such design being accomplished.' "

Defendant argues the instruction given is not clear and requested the addition of the following two paragraphs:

"'Reasonable cause to apprehend' and the 'immediate danger of accomplishment' of such acts are to be determined as the circumstances appeared to the defendant at the time, even though the danger was not real but only apparent.

"You are instructed, therefore, that you may give consideration to the past experiences of the defendant concerning the proclivity of the decedent for physical violence and if you find that Edna Mae Booker, at the time, on March 8, 1965, had reasonable cause and did, in fact, fear that the decedent was approaching her with intent to do her some great personal injury you should find her not guilty."

We do not agree with defendant that the meaning of the phrases "reasonable cause to apprehend" and "immediate danger of accomplishment" is too subtle for a jury's comprehension. Further, we believe under the evidence in this case, concerning the firing of the four shots, the addition of the second paragraph requested by defendant would have removed from the jury's consideration questions which necessarily must be resolved in determining whether defendant's actions were justifiable. Defendant relies on *State v. Livesay*, 71 Idaho 442, 233 P. 2d 432, in support of her argument on this point. In *Livesay*, as here, a wife was charged with first degree murder of her husband and convicted of first degree manslaughter. As in this case, the shooting occurred during an affray resulting from an argument about marital infidelity. The Idaho court reversed, finding error in the instruction on justifiable homicide, as stated in headnote 6:

"In prosecution for first degree murder wherein defendant claimed justifiable homicide, giving instruction that if defendant intentionally put herself where she knew or believed she would have to invoke aid of self defense she could not claim it regardless of circumstances which intervened was prejudicial error, and error was not cured by other instructions." (p. 443.)

The decision is not persuasive in this case. First, the instruction given here can not be construed as prohibiting resort by defendant to the defense of justifiable homicide. Second, in *Livesay* only two shots were fired. Defendant *Livesay* testified the first was an intentional miss, fired to frighten the victim. The second and fatal shot was fired after the victim had approached defendant and was in bodily contact with her. In the case at bar four shots were fired into the body of deceased, the sequence of the firing, and whether all of the shots were justifiable or fired in self-defense were questions for the jury. According to the testimony of Dr. Neudorfer neither of the two facial shots were fatal but either of the two body wounds would have caused death. From the testimony of Wilda Farley, as she entered the room, the victim was on the floor in a corner

and the defendant was standing over him and still shooting. From the testimony an inference may be drawn that the two facial shots were fired first and then followed by the two fatal body shots when deceased was already on the floor. The divergence of evidence as to the shooting makes the two cases clearly distinguishable.

Under the evidence developed in the instant case we believe the instruction in question when considered with the instructions as a whole and in particular with the trial court's comprehensive instruction on self-defense adequately informs the jury of the considerations involved.

Defendant next complains of the trial court's instruction explaining the term "reasonable doubt." The record does not reveal any objection to the instruction before it was submitted nor does defendant raise the point in his motion for a new trial. The question is not entitled to appellate review. (*State v. Freeman*, 198 Kan. 301, 424 P. 2d 261.) Nevertheless, though not required to do so, we have examined the instruction given and find it to be in substantial compliance with instructions on the subject approved by this court in *State v. Killion*, 95 Kan. 371, 148 Pac. 643; *State v. Mullins*, 95 Kan. 280, 147 Pac. 828; *State v. Patton*, 66 Kan. 486, 71 Pac. 840.

Defendant urges error in the admission of testimony concerning defendant's behavior subsequent to the offense charged. The evidence attacked is the testimony of two neighbors who saw Sergeant McElroy at the Booker home a number of times subsequent to the shooting. They saw McElroy's car parked at the Booker house at all times during the day and in the evening on many occasions. Defendant argues such testimony was irrelevant and only offered to raise dirty insinuations or suspicions. The state argues it was relevant and admissible for the purpose of showing motive.

Under the prosecution's theory, as developed by the evidence, we believe the evidence admissible for the purpose of showing motive. It is to be noted that evidence relevant to prove motive is excepted from the prohibition as to evidence of other crimes or civil wrongs under the provisions of K. S. A. 60-455. In *State v. Scott*, 117 Kan. 303, 235 Pac. 380, a husband was prosecuted for the murder of his wife. The prosecution attributed as a motive an affair between defendant and his niece. Evidence of defendant visiting his niece after the crime was admitted by the trial court and challenged on appeal. This court held:

"In a case where a husband is charged with the murder of his wife, and the state contends that the motive was defendant's infatuation for and criminal intimacy with another woman, causing defendant to want to get rid of his wife, any evidence of circumstances before or soon after the homicide which fairly tend to establish such infatuation and intimacy, at the time of the homicide, may be received, but evidence of circumstances which only by pure speculation can be said to tend to establish such facts, should not be received." (Syl. ¶ 2.)

See, also *State v. Burton*, 63 Kan. 602, 66 Pac. 633; *State v. Reed*, 53 Kan. 767, 37 Pac. 174, and 1 Jones on Evidence (5th Ed.) § 159, pp. 285, 286.

Finally, defendant claims error in being required to stand trial on a charge of murder in the first degree after having been previously convicted of manslaughter in the first degree in a previous trial when she was tried for first degree murder. The question is settled by our opinion in the recent case of *Cox v. State*, 197 Kan. 395, 416 P. 2d 741, wherein we reexamined the position of this court with regard to the statutory framework within which a new trial is granted in this state. Further comment is unnecessary.

Defendant also claims error in the trial court's overruling of her motions for discharge and a new trial. With respect to defendant's motion for discharge the record discloses the state offered evidence consisting of the testimony of fifteen witnesses and a taped statement of defendant during a four-day trial. The shooting was admitted, the jury rejected defendant's theory of self-defense and justifiable homicide and likewise the prosecution's theory of first degree murder. There is ample evidence to support the verdict of manslaughter in the first degree.

We find no issues raised in defendant's motion for a new trial that have not been considered and resolved herein. Further discussion would only be repetitious. The record discloses defendant had the benefit of vigorous and competent representation throughout these proceedings. We think a fair trial was had and the judgment must be affirmed.

It is so ordered.